2004-NMCA-008

82 P.3d 975

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Joe Everisto GURULE, Defendant–
Appellant.**

**No. 22,426.**

Court of Appeals of New Mexico.

Nov. 18, 2003.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM, Elizabeth Blaisdell, Assistant Attorney General, Albuquerque, NM, for Appellee.

John B. Bigelow, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

KENNEDY, Judge.

{1} Following a jury trial, Defendant Joe Gurule appeals his convictions for second-degree murder contrary to NMSA 1978, § 30–2–1(B) (1994), and tampering with evidence contrary to NMSA 1978, § 30–22–5 (1963). On appeal, Defendant argues that the trial court erred in (1) admitting into evidence a videotaped statement of an unavailable witness, (2) denying Defendant's request for a self-defense jury instruction, and (3) finding that there was sufficient evidence to convict Defendant of second-degree murder. Another issue raised by Defendant is moot.

{2} We agree that the videotape was erroneously admitted under Rule 11–804(B)(5) NMRA 2003, the catch-all exception to the hearsay rule, particularly in light of the trial court's specific findings that independent indices of trustworthiness pertinent to other "firmly rooted" hearsay exceptions were not sufficiently present for its admission under those exceptions. We hold the evidence was sufficient to support Defendant's conviction for second-degree murder. We also discuss the propriety of denying Defendant's self-defense jury instruction in the context of this trial because the issue will likely be raised again.

## BACKGROUND

### General Facts

{3} The jury found that Defendant fatally stabbed Jerry Ortiz on May 24, 2000, in Espanola, New Mexico. On that date, two groups of people, one including Defendant, and one including Ortiz, met for a fight outside of Defendant's residence. Ortiz was part of a group that traveled to Defendant's trailer to vindicate a friend, Solomon Ramirez, for a beating Ramirez had allegedly received at Defendant's trailer earlier in the afternoon. Both groups conceded that they had been drinking and using drugs that day. In fact, at the time Ortiz's group arrived at Defendant's residence, Defendant and his girlfriend, Deanna Martinez, were in the trailer shooting heroin. Ortiz had a blood alcohol concentration of .36% at the time of his death.

{4} The evidence established that Defendant was inside his trailer along with Martinez, Carlos Talavera, and Alfonso Jose "Smokey" Quintana when the car carrying Ortiz and his group drove onto Defendant's property. Those in the car left the vehicle and began yelling. According to some witnesses, Defendant, Martinez, Talavera, and Quintana went outside. Martinez stated in her videotaped statement that as Defendant went out, he grumbled about those "jodidos." ("Jodidos" is translated as "punks" or "f* * * * * * ").

{5} Arguments between the two groups ensued, and several people were said to be brandishing "poles," "sticks," or "boards" of some sort. After Defendant exited the trailer, he argued with Ortiz, who was immediately thereafter observed on the ground bleeding from a severe stab wound at the base of his neck. No witness actually observed the stabbing. Ortiz's aorta was severed, resulting in massive bleeding, which led to his death.

{6} In her videotaped statement to the police, Martinez stated that after Ortiz was stabbed, Defendant returned to his trailer, rinsed blood off a knife in the sink, gave it to her telling her to get rid of it, and then attempted to leave the scene in his truck along with Martinez and Talavera. They were almost immediately blocked in the driveway by police officers who were responding to reports of gunshots fired on Defendant's property.

{7} Defendant, Martinez, and Talavera were ordered out of the truck and the officers separated them. None of them were free to leave. Defendant was arrested and removed from the property. Martinez was initially held by the police for possession of drug paraphernalia, and she admitted that she was using drugs. Talavera remained at the trailer for questioning. During this time following the incident, while Martinez remained at the scene of the stabbing, she provided officers with four statements concerning the events of the evening, the last of which was videotaped. Martinez was never charged with any crime.

{8} Many of those who were present at the incident ultimately were subpoenaed by the State, but had no desire to testify. Some professed a fear of Defendant to justify their reticence. The trial court went so far as to instruct them as a group that they could be held in contempt of court if they did not honor their subpoenas and appear to testify. At trial, those witnesses who took the stand testified that they did not see what happened, or refused to testify at all. Some witness testimony during the trial conflicted with prior statements that were made to the authorities. These witnesses were impeached with their prior statements made to the police; those statements were only used for impeachment purposes, not as substantive evidence.

{9} Martinez could not be located to be served with a subpoena prior to trial, and she did not appear in court. Based on her unavailability, the State sought to use the videotaped statement that Martinez had given to the police approximately four hours after the stabbing, and the trial court admitted the video into evidence. The defense objected to the use of this evidence on several occasions throughout the trial. After the trial court ruled to allow the videotaped statement as evidence, the defense requested and was granted the opportunity to present Martinez's three earlier oral and written statements made to various officers which contained some information that conflicted with that on the video statement. These statements were admitted by the trial court as substantive evidence, not just for purposes of impeachment. The defense was also allowed to call its investigator to testify about an interview he conducted with Martinez some four months after the stabbing which contained information that was inconsistent with the statements provided on the videotape.

**Martinez's Statements**

{10} During the three hours following the incident, Martinez gave four statements to investigating officers. She gave oral statements to Officers Guillen and Sanchez, which were apparently included in the police reports that are not in the record proper, and a separate handwritten statement to Officer Viarreal. In these statements, Martinez said that she had not seen the altercation, but had heard noise outside and gone out to see Ortiz lying on the ground bleeding. While in the police unit approximately four hours after the incident, and following the handwritten statement she gave to Viarreal, Viarreal stated that Martinez decided that she wanted to give a complete statement concerning the incident, which resulted in the videotaped interview with Lieutenant Montoya and Detective Trujillo.

{11} In the videotape, Martinez described the events that occurred throughout the day in question, including Defendant's use of and contact with the knife used in the stabbing. She stated that he opened the folding knife when the group of screaming people arrived at his trailer. He went outside, after referring to the group as "jodidos," and the argument ensued. After engaging in an altercation with one of Ortiz's female companions, Martinez stated she became aware that Ortiz was down, saw Ortiz bleeding, and went inside to grab a sheet in an attempt to stop the bleeding. After Ortiz was taken away, Defendant came back in the trailer where Martinez was, and Martinez saw him rinse blood off the same knife he held when he exited the trailer. After he rinsed it, Defendant handed her the knife, and told her to get rid of it.

{12} The video interview reveals that Martinez continued to maintain, as she had in the previous statements, that she did not witness the stabbing itself. She said that after Defendant told her to "get rid of it," she took the knife and hid it under the seat of Defen-

dant's truck, where it was later found by investigators. Further, when asked, she identified the knife and said that the knife belonged to Defendant, he had washed blood off of it in the trailer after the stabbing, the handle of the knife had parts missing which made it unique and identifiable, and she had seen it on prior occasions, including the time when Defendant had held it to her throat and threatened to kill her.

{13} Some four months later, Martinez gave another statement to a defense investigator. In this statement, Martinez said she had never seen a knife, or Defendant washing one, and returned to her original story that she came out of Defendant's trailer only after Ortiz had been stabbed.

## DISCUSSION

### Martinez's Videotaped Statement Was Not Admissible Under Rule 11–804(B)(5) and the Admission of Such Evidence Violated Defendant's Right to Confront Witnesses

{14} The case proceeded to trial, and the State moved to admit the videotape under the "catch-all" exception Rule 11–804(B)(5) when it became apparent that Martinez could not be found to testify. The defense objected to admitting the videotape into evidence on Confrontation Clause grounds. The defense also objected to the State's secondary argument that the videotape should be admitted as an excited utterance or a statement against penal interest. The trial court decided against the excited utterance and penal interest arguments, and ruled that the videotape was admissible under Rule 11–804(B)(5) as substantive evidence. The evidence was presented to the jury. The defense sought and was granted use of Martinez's prior and subsequent statements for purposes of impeachment and as substantive evidence.

### Hearsay and Confrontation Clause

#### Standard of Review

■ {15} On appeal Defendant rightly argues that Martinez's videotaped statement was hearsay. It was an out of court statement made by an absent declarant, and was offered as evidence by the State for the truth of its contents—namely, the only evidence

directly associating Defendant with the knife. Rule 11–801(C) NMRA 2003. The admission of an extrajudicial statement as an exception to the hearsay rule is reviewed for an abuse of discretion. *State v. Johnson*, 99 N.M. 682, 687, 662 P.2d 1349, 1354 (1983). However, in this case, Defendant also contends that the videotaped statement violated his due process right to confront witnesses under the United States and New Mexico Constitutions. *See* U.S. Const. amends. VI, XIV; N.M. Const. art. II, § 14. This Court reviews Confrontation Clause violations separate from the question of admissibility under hearsay rules because a due process violation raises a question of law. *State v. Ruiz*, 120 N.M. 534, 536, 903 P.2d 845, 847 (Ct.App. 1995); *State v. Martinez*, 99 N.M. 48, 51, 653 P.2d 879, 882 (Ct.App.1982) ("The breadth of the hearsay rule and the confrontation clauses of the state and federal Constitutions are not coextensive."). Therefore, the question of whether Martinez's out of court videotaped statement is admissible under the Confrontation Clause is a question of law, subject to de novo review. *Ruiz*, 120 N.M. at 536, 903 P.2d at 847.

#### Excited Utterance and Statement Against Interest Exceptions

{16} The State sought admission of the videotape primarily under the catch-all exception. It also offered the evidence under the excited utterance exception Rule 11–803(B) NMRA 2003, and as a statement against interest Rule 11–804(B)(3). We summarize the trial court's analysis of these hearsay exceptions because it informs our review of the catch-all exception under which the trial court ultimately admitted the videotape.

{17} The trial court rejected the State's argument that Martinez's statement was an excited utterance for two reasons: first, there had been a time lapse of four hours since the incident, and the videotape was the fourth time she had given a statement to officers; second, because the statement was given in response to police inquiry. The trial court further found that there was enough time between the event and the statement for Martinez to have prepared a story.

{18} The trial court also rejected the State's argument that Martinez's videotaped statement was against her penal interest. The trial court so found because she indicated some fear of Defendant, which the trial court thought could have been an effort on her part to exculpate herself from any tampering with evidence charge resulting from following Defendant's instruction to "get rid of" the knife, perhaps by a duress defense. "[A] confession that shifts or spreads blame from the declarant to incriminate co-criminals" is the type of statement "whose reliability is particularly suspect." *Denny v. Gudmanson*, 252 F.3d 896, 903 (7th Cir.2001). Further, the trial court found that the degree to which she was inculpating herself on the other matters, such as possession of drug paraphernalia, was insufficient to be a statement "so far" against her penal interest. *See State v. Reyes*, 2002–NMSC–024, ¶ 36, 132 N.M. 576, 52 P.3d 948 (concluding that declarant's statement was admissible because it "*so far tended to subject a person to criminal liability,* rather than to relieve him or her of it, that a reasonable person in the declarant's position would not have made the statement unless he or she believed it to be true") (emphasis added); *State v. Torres*, 1998–NMSC–052, ¶ 11, 126 N.M. 477, 971 P.2d 1267 (determining that non-self-inculpatory statements inculpating a defendant may not be admitted under the statement against interest exception as part of a broader narrative that may be self-inculpatory as to other topics). The trial court could reasonably have so found.

## Catch–All Exception to Hearsay Rule

### Hearsay Analysis

■ {19} After rejecting the State's arguments that Martinez's statement was either an excited utterance under Rule 11–803(B) or a statement against penal interest under Rule 11–804(B)(3), the trial court ruled that the video would be admitted under the catch-all exception to the hearsay rule under Rule 11–804(B)(5) because the video statement had the requisite "guarantees of trustworthiness." Rule 11–804(B)(5) applies when a witness is unavailable to testify and provides in relevant part:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness [is admissible], if the court determines that

(a) the statement. is offered as evidence of a material fact;

(b) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(c) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

{20} In this case, it is not contested that Martinez was an unavailable witness within the meaning of Rule 11–804(A). In addition, Martinez's videotaped statement was offered as evidence of a material fact, and the videotaped statement, if accepted, was likely more probative than any other evidence on the question of Defendant's connection to the instrumentality of Ortiz's death. However, Defendant contends that the admission of Martinez's videotaped statement violated his constitutional right to confront witnesses.

{21} In finding the requisite guarantees of trustworthiness for the purposes of Rule 11–804(B)(5), the trial court made findings contradictory to its rulings denying admission under the excited utterance and statement against interest exceptions. In its previous rulings the trial court had found that the videotaped statement did not constitute an excited utterance or a statement against penal interest because there were three previous statements in response to questioning by police, there was time for Martinez to fabricate, and the statements themselves were not sufficiently self-inculpating. Despite this, when evaluating the same evidence for Rule 11–804(B)(5) purposes, the trial court said, "it appears fairly obvious that she's still excited from a fairly traumatic event at the time," and "I don't see anything about lack of candor in this particular situation. She has implicated herself, in effect, for having hid the knife, and that she participated in that." Finally, the trial court was impressed that Martinez expressed a willingness to bare her

soul, "to tell all" as the trial court phrased it, because of the horrendous event she witnessed. These contradictory findings reflect that the videotapes statement lacked guarantees of trustworthiness.

{22} A catch-all exception should not be used as a fall-back for second rate evidence that does not pass muster under other exceptions. *See State v. Taylor,* 103 N.M. 189, 199, 704 P.2d 443, 453 (Ct.App.1985) (affirming the principle that the catch-all exception should be stringently applied in criminal cases). It should be a method by which evidence that is of equal reliability but does not fall under a "firmly rooted" exception is admitted. This is the essence of requiring "particularized *guarantees* of trustworthiness" to admit hearsay when the established and named hearsay exceptions fail. The word "guarantee" bespeaks a requisite certainty equal to the assumed trustworthiness of the firmly rooted exception. Analysis under the tests for sufficient reliability with respect to the Confrontation Clause proves this point.

### Confrontation Clause

{23} Defendant maintains that the admission of Martinez's videotaped statement violated his right to confront the State's only witness who could link Defendant to the knife used in the stabbing.

In New Mexico, the Confrontation Clause permits admission of a non-available declarant's hearsay statement if it falls within a "firmly rooted exception" to the hearsay rule. If the disputed statement does not fall within a firmly rooted hearsay exception, then there must be "particularized guarantees of trustworthiness" equivalent to those associated with a firmly rooted exception. *State v. Lopez,* 2000–NMSC–003, ¶ 15, 128 N.M. 410, 993 P.2d 727 (internal quotation marks and citation omitted). When a declarant is unavailable, the Confrontation Clause of the Constitution requires that out of court statements must bear sufficient "indicia of reliability" to be admissible. *State v. Woodward,* 1996–NMSC–012, ¶ 38, 121 N.M. 1, 908 P.2d 231 (internal quotation marks and citation omitted). These indicia must be suffi-ciently strong to guarantee the trustworthiness of the evidence.

{24} For this reason, "catch-all" exceptions, such as Rule 11–804(B)(5), are not considered to be "firmly rooted." *See* 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 807.03[2][c], at 807–20 (2d ed.2003). In fact, statements admitted under this rule are considered by New Mexico courts to be "presumptively unreliable and inadmissible." *Lopez,* 2000–NMSC–003, ¶ 16, 128 N.M. 410, 993 P.2d 727 (internal quotation marks and citations omitted). Because the "catch-all" exception is not firmly rooted, statements admitted pursuant to this rule must be separately proven to be reliable and trustworthy. In evaluating the "sufficient guarantees of trustworthiness" of the statement under the Confrontation Clause, this Court considers "four factors leading to unreliability: (1) ambiguity; (2) lack of candor; (3) faulty memory; and (4) misperception." *Id.* ¶ 17 (internal quotation marks and citation omitted). While conducting this evaluation, courts may not consider extrinsic "evidence that corroborates the veracity of the statement." *Id.* (internal quotation marks and citation omitted). Rather, the court must only consider the totality of the circumstances under which the statement was made and "[w]hen a court can be confident ... that 'the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility,' the Sixth Amendment's residual 'trustworthiness' test allows the admission of the declarant's statements." *Lopez,* 2000–NMSC–003, ¶ 15, 128 N.M. 410, 993 P.2d 727 (quoting *Lilly v. Virginia,* 527 U.S. 116, 119, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (internal citation omitted)). This is a robust test with stringent controls. We believe that the characterization of this exception as "residual" points to admitting evidence that can pass muster only under degrees of trustworthiness equal to, but separate from the other enumerated exceptions. Perhaps more importantly, the inclusion of a test where truthfulness must also be so clear that "cross-examination would be of marginal utility" sets a standard that precludes the

admission of hearsay statements that contain equivocation and contradiction.

### Corroborating Evidence May Not Be Considered

{25} Applying the Supreme Court's directives to the facts in this case, the videotaped statement must stand or fall on its own merits. The trial court cannot consider that Martinez's statement of what she did with the knife in the truck was corroborated by physical evidence of its location. Thus, we look to see if the totality of circumstances surrounding her statements provide independent, particularized guarantees of trustworthiness. *Ross*, 122 N.M. at 24, 919 P.2d at 1089. Here, the trial court supported its admission of the videotape with the statement that "[i]nasmuch as the knife was under the seat where she said it would be ... I think that would be sufficient to my mind." The State concedes that the trial court considered these facts, together with the State's proffer that DNA evidence, later suppressed, would show Ortiz's blood on the knife. We see this as weakening the case for the videotape's admission because it indicates that corroborating evidence was part of the trial court's calculus of admission.

### Ambiguity

{26} Martinez's statement is not ambiguous in its description of the events surrounding the murder of Ortiz. With regard to ambiguity, the court determines whether there is a "danger that the meaning intended by the declarant will be misinterpreted by the witness and hence the jury." *State v. Trujillo*, 2002–NMSC–005, ¶ 17, 131 N.M. 709, 42 P.3d 814 (internal quotation marks and citations omitted). This videotaped statement is the most clear, detailed, and definite statement Martinez gave. It is also contradicted in crucial points by her other statements, which are also not ambiguous. For this statement, the declarant was videotaped, and the jury saw the videotape. "[T]he jury had the opportunity to interpret [her] statement themselves rather than rely on some other witness's interpretation." *Id.* ¶ 18. The trial court found that the videotaped statement was clear and not ambiguous because it did not conflict with Martinez's first three statements. Rather, the trial court found that Martinez merely omitted information she provided in the video from the three previous statements. However, her other statements were not capable of or accorded the powerful presentation of video, and the contradictions could not be explored by cross-examination.

### Candor

{27} Under this element, the court considers the danger of the declarant consciously lying. *Id.* ¶ 17. The trial court found that there was no lack of candor in this particular situation in that Martinez implicated herself for having hid the knife and by indicating that she was on drugs. In her written statement, Martinez indicates that Defendant was looking out the bathroom window from the trailer when she heard one of the women outside yelling for a towel, at which time Martinez ran outside. In her oral statement to Officer Guillen, she said the same thing; she and Defendant were inside, then someone yelled that Ortiz had been stabbed. These statements are not as vivid for not having been videotaped, but they are very much at odds with the videotaped statement. Some months later, in Martinez's statement to Defendant's investigator Mr. Delgado, she again stated that she did not see the stabbing or a knife and also said that she made her videotaped statement because the police were going to charge her with accessory. Martinez stated that she provided the video statement after contemplating the situation while she was in the police unit, because it was "the right thing" to do and "want[ed] to tell all" because she genuinely felt bad seeing a man die in her presence. *See Morales v. Portuondo*, 154 F.Supp.2d 706, 726–28 (S.D.N.Y.2001) (stating that such statements may be particularly trustworthy for reasons like the other hearsay exceptions). This is precisely why the contradictions and motives underlying the videotaped statement as against Martinez's other statements would make the "test" of cross-examination particularly crucial to presenting the videotaped statement in context.

*Faulty Memory*

{28} There is no indication that Martinez's memory was faulty or that she forgot key information at the time the videotape interview was conducted. The trial court determined that other than Martinez not hearing gunshots, she remembered all of the important points of the incident. In this case, Martinez gave her video statement approximately four hours after the stabbing incident, and to all appearances, the significant events that had transpired that day were fresh in her mind. Again, however, in all of her earlier statements, Martinez indicated that she did not witness Defendant stabbing Ortiz, and Defendant never actually told her that he was responsible for the murder.

{29} The statement Martinez gave approximately four months later to the defense investigator was also largely consistent with her other statements when it came to her recounting the circumstances of the altercation. The inconsistencies between this statement and her videotape primarily concern Defendant's involvement and the role of police in getting her statement. The freshness of her memory is not a factor; the contents of her memory and inconsistencies between her statements are.

*Misperception*

{30} Finally, the trial judge found that Martinez did not misperceive anything. However, we conclude that there is a significantly different quantum of recollection between Martinez's statements. Either she was present during the stabbing or she was not. Either Defendant had the knife or he did not. Either he exited the trailer for a fight, or he was inside when Ortiz was stabbed. Her statements to either side of events do not show any misperception. Martinez admitted to shooting heroin earlier in the evening which might have compromised her perception of the incident (although the jury was aware of her drug use and could factor it into its verdict). Her statements of events, though contradictory, were unequivocal.

*Overall Lack of Trustworthiness*

{31} Based on the foregoing analysis, we hold that Martinez's videotaped statement was not sufficiently trustworthy. The defense was not able to cross-examine Martinez during the trial, and a comparison of all the statements shows sufficient contradiction for us to conclude that cross-examination could have been of great utility, possibly even the single, most important factor for the jury to evaluate in deciding whether to convict.

{32} The video was more complete and probative on the point for which it was offered than any other evidence which the State could procure. Its admission was not harmless. The independent indicia of reliability to which the trial court was obligated to look were not sufficiently present to justify the trial court's admission of the statement under Rule 11–804(B)(5). The admission of the video cannot pass constitutional muster, and we must reverse the trial court's decision to admit it.

**Self–Defense Instruction**

{33} Defendant argues that the trial court erred in denying his requested jury instruction on self-defense. On appeal, the review of the denial of a defendant's requested jury instruction is a mixed question of law and fact which we review de novo. *State v. Gaines,* 2001–NMSC–036, ¶ 4, 131 N.M. 347, 36 P.3d 438. We do not weigh the evidence, but rather determine whether there is sufficient evidence to raise a reasonable doubt about self-defense. *Id.; see also State v. Ungarten,* 115 N.M. 607, 611, 856 P.2d 569, 573 (Ct.App.1993).

{34} For such an instruction to be given, Defendant must show "evidence sufficient to allow reasonable minds to differ as to all elements of the defense." *State v. Branchal,* 101 N.M. 498, 500, 684 P.2d 1163, 1165 (Ct.App.1984). The foundational predicate to doing this involves the existence of evidence sufficient to show that (1) there was an appearance of immediate danger or great bodily harm to Defendant as a result of Ortiz's actions, (2) Defendant actually believed he was in immediate danger and killed Ortiz to prevent death or serious injury, and (3) the

apparent danger would have caused a reasonable person in the same circumstances to act as Defendant did. *State v. Gallegos,* 2001–NMCA–021, ¶ 15, 130 N.M. 221, 22 P.3d 689. The trial court correctly applied this framework when it denied the Defendant's requested instruction on self-defense.

{35} The scene at Defendant's trailer of a group of intoxicated people, including Ortiz, intent on vindicating what they thought had been the beating of Solomon Ramirez might have presented an appearance of immediate danger. At the time, though, Defendant was in his trailer shooting heroin and not in any direct contact with the group until he went outside. When the group of people initially arrived at Defendant's residence, he did not report the commotion to the police nor did he remain inside the trailer out of harm's way. Both Quintana and Martinez testified that when Ortiz and his group arrived, Defendant went straight out to meet them, spouting some expletives on his way. This is not evidence that he was afraid. The trial court found that the second element of the standard necessary to show self-defense had not been established: there had been no evidence presented that Defendant was in fear of actual great bodily harm or death from Ortiz. Quite the contrary, Quintana's testimony and Martinez's statements have Defendant taking the knife and then exiting the trailer to confront the angry group. Quintana testified that as Defendant left the trailer, he told Quintana and Martinez to "kick back" and not go outside. Defendant then confronted the mob and engaged in an altercation that left Ortiz dead. These are not the actions of a person motivated by mortal fear. No evidence suggests that Defendant was put in fear of Ortiz, that Defendant killed Ortiz because of that fear, or that a reasonable person would have killed Ortiz under these circumstances.

{36} Defendant was entitled to a self-defense instruction only if there was evidence of self-defense. The evidence presented at trial was insufficient and the trial court correctly refused the instruction.

### Sufficient Evidence Supports the Conviction for Second–Degree Murder

{37} Finally, Defendant argues that his due process rights were violated but there was insufficient evidence before the jury to prove beyond a reasonable doubt that he committed second-degree murder. Defendant contends that the State only presented contradictory and unsubstantiated testimony concerning the events of May 24, 2000, and this alone is insufficient grounds upon which to enter a conviction. Again, we reject Defendant's argument.

{38} This Court holds that "[s]ubstantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Rojo,* 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829. In reviewing claims of insufficient evidence, "we resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Id.* The jury is free to reject Defendant's version of the facts, and thus, evidence contrary to the verdict does not provide a basis for reversal. *State v. Salazar,* 1997–NMSC–044, ¶¶ 44, 46, 123 N.M. 778, 945 P.2d 996. Determining the sufficiency of the evidence "does require appellate court scrutiny of the evidence and supervision of the jury's fact-finding function to ensure that, indeed, a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." *State v. Garcia,* 114 N.M. 269, 274, 837 P.2d 862, 867 (1992). This Court reviews the evidence to determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to each essential element of the crime charged. *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). It is up to the jury to weigh the testimony and contradictory evidence and believe or disbelieve any testimony it hears. *State v. Foster,* 1999–NMSC–007, ¶ 42, 126 N.M. 646, 974 P.2d 140. This Court does not substitute its judgment for that of the factfinder concerning the credibility of witnesses or the weight to be given their testimony. "Testimony by a witness whom the factfinder has believed may be rejected by an appellate court only if there is a physical impossibility that the

statements are true or the falsity of the statement is apparent without resort to inferences or deductions." *State v. Sanders,* 117 N.M. 452, 457, 872 P.2d 870, 875 (1994).

{39} In this case, there was sufficient evidence to support a conviction for second-degree murder. *See State v. Castillo–Sanchez,* 1999–NMCA–085, ¶ 30, 127 N.M. 540, 984 P.2d 787 (stating that in reviewing a sufficiency of the evidence issue, we consider all evidence admitted, even if we conclude that some of the evidence was inadmissible). The jury considered the evidence and found that Defendant's actions created a strong probability of death or great bodily harm as required by Section 30–2–1(B). Defendant was present at the stabbing scene and argued with Ortiz. Both Martinez and Quintana stated that the knife belonged to Defendant. Martinez saw Defendant with the knife, observed him open the knife, and recalled that Defendant washed blood off of it and instructed Martinez to dispose of it. There was evidence from both Martinez and Monique Ramirez that nobody else was involved in the altercation between Defendant and Ortiz. The medical examiner testified that Ortiz's fatal stab wound could have been made with Defendant's knife. In addition, Defendant was apprehended fleeing from the scene shortly after the stabbing occurred. No other evidence suggests that anyone else at the incident stabbed Ortiz, except for Quintana's testimony that he stabbed victim in self-defense. The jury heard Quintana's testimony, and it had the opportunity to weigh the information Quintana provided to the trial court. Quintana's testimony was not supported by any other testimony or evidence. For example, none of the other witnesses recalled that Quintana was around Ortiz at the time of the stabbing. Nor did anyone else observe Ortiz with a knife, as suggested by Quintana. Further, in contrast to the information given by Quintana, the knife was found in Defendant's truck, not on the ground where Ortiz was stabbed and not under the neighbor's car. In light of the information provided at trial, there was sufficient evidence for the jury to conclude that Defendant was responsible for the stabbing.

## CONCLUSION

{40} Based on the foregoing reasons, we reverse Defendant's convictions for second-degree murder and tampering with evidence, and remand the case for a new trial.

{41} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and CYNTHIA A. FRY, Judges.