| STATE V. AGUILAR |
|---|

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**DANIEL AGUILAR,**
**Defendant-Appellant.**

Docket No. A-1-CA-34520
COURT OF APPEALS OF NEW MEXICO
April 16, 2019

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY, Charles W. Brown, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Santa Fe, NM, Charles J. Gutierrez, Assistant Attorney General, Albuquerque, NM, for Appellee

Law Offices of Jennifer J. Wernersbach, P.C., Jennifer J. Wernersbach, Albuquerque, NM, for Appellant

**JUDGES**

BRIANA H. ZAMORA, Judge. WE CONCUR:  J. MILES HANISEE, Judge, JACQUELINE R. MEDINA, Judge

**AUTHOR:** BRIANA H. ZAMORA

**MEMORANDUM OPINION**

**B. ZAMORA, Judge.**

{1}     Defendant Daniel Aguilar appeals his convictions for second degree murder and tampering with evidence. Defendant argues that there is insufficient evidence to support either of his convictions, that the district court erred in failing to instruct the jury on the lesser included offense of voluntary manslaughter, and that the admission of witness testimony solely for the purpose of impeachment was error. We affirm.

BACKGROUND

{2}     Defendant's convictions stem from the fatal shooting of Dominic Sanchez. On July 31, 2012, at approximately 3:30 p.m., Shawn Parker called Defendant and invited him over to her apartment. Approximately thirty to forty-five minutes later, Defendant arrived at the apartment complex in a green Subaru station wagon and visited with Parker in her apartment for about fifteen to twenty minutes. According to Parker, Defendant was wearing jeans, was shirtless, and had several noticeable tattoos. After Defendant left, Parker went to her bedroom, and within minutes she heard three gunshots and screaming. As Parker ran outside, she saw Sanchez on the ground surrounded by family members.

{3}     Crystal and Leanna, Sanchez's sisters, lived at the same apartment complex with other family members, including Sanchez. On the afternoon of the shooting, their next-door neighbor came to their door and invited Sanchez outside. Sanchez and his neighbor smoked underneath a tree in front of Sanchez's apartment, and within minutes both sisters heard gunshots.

{4}     Sanchez's sisters looked out the front window of their apartment and saw a man brandishing a firearm and quickly fleeing from the apartment complex in a green Subaru. Crystal described the man as bald and wearing "a wife beater, a white one." Leanna also described the driver of the green Subaru as bald, but could not recall if he was wearing a shirt. Both sisters ran outside and found Sanchez lying face up and unresponsive. The scene was chaotic—Crystal's daughters were screaming, Sanchez's mother was frantic and, according to Crystal, they "were all going crazy." When Leanna turned her brother's body over, she observed a bullet hole in the back of his head.

{5}     Paula Estrada, another resident of the apartment complex, heard a "ruckus" and "people . . . screaming" on the afternoon of the shooting. As Estrada looked out the window, she saw a dark-colored vehicle with a male driver and a female passenger leaving the complex. Estrada testified she had known Defendant for years, but from her vantage point, she was unable to identify whether Defendant was the driver of the green Subaru. This testimony conflicted with her prior statements, in which she identified Defendant as the driver of the green Subaru and as the shooter. Prior to trial, an officer had interviewed Estrada and prepared a photographic lineup from which Estrada identified Defendant as the shooter. Despite this, she clarified at trial that she merely repeated to police what she had overheard from other unidentified persons.

{6}     Dr. Benjamin Soriano, a forensic pathologist at the Office of the Medical Investigator, performed the autopsy on Sanchez's body. Dr. Soriano opined that Sanchez had a single bullet wound and that the bullet lodged into the left side of Sanchez's brain. Based on the entrance wound, Dr. Soriano determined that the trajectory of the bullet went from the back of his head to the front and from the right side to the left. Because there was no stippling (unburnt gunshot particles) found near the entry wound, Dr. Soriano opined that the shooter shot at Sanchez from a range of more

than eighteen to twenty-four inches away. Dr. Soriano concluded that Sanchez's cause of death was a gunshot wound to the head and the manner of death was a homicide.

{7}    Officers located three .25 caliber automatic casings at the crime scene. They found two casings in the parking lot in front of the apartment and the other in the middle of the street. Officers also found a loaded, but unfired, .22 caliber firearm adjacent to Sanchez's body, which apparently had fallen from his waistband.

{8}    By the time the officers left the crime scene, Defendant was identified as a suspect and officers began searching for him and the green Subaru. Later that night, at approximately 9:20 p.m., officers located a green Subaru at an address in the foothills. When officers located the green Subaru, it appeared to have been recently washed and, as a result, they were unable to collect DNA or fingerprint marks. Moreover, the green Subaru contained no paperwork that established ownership of the vehicle. The following morning, officers located and apprehended Defendant at a Motel 6.

{9}    The State introduced several photographs of the green Subaru during trial. Parker identified the Subaru in the photographs as the vehicle Defendant drove to her apartment on the day of the shooting. Sanchez's sisters identified the green Subaru depicted in the photographs as the vehicle they observed fleeing from the apartment complex on the afternoon of the shooting. Finally, a crime scene investigator verified that the photographs of the Subaru located in the foothills was the same green Subaru identified in the photographs by Parker and Sanchez's sisters.

{10}    After the State presented its case in chief, the Court granted, in part, Defendant's motion for directed verdict and dismissed the following charges in the grand jury indictment: felony murder; two counts of shooting at or from a motor vehicle; and conspiracy to commit tampering with evidence.[1] The jury convicted Defendant of the two remaining counts: the lesser included offense of second degree murder with a firearm enhancement and tampering with evidence.

DISCUSSION

I.    Sufficiency of the Evidence

A.    Standard of Review

{11}    Defendant challenges the sufficiency of the evidence supporting both of his convictions. We must determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Flores*, 2010-NMSC-002, ¶ 2, 147 N.M. 542, 226 P.3d 641 (internal quotation marks and citation omitted).

---

[1] The grand jury originally indicted Defendant on the charge of felon in possession of a firearm. However, the felon in possession of a firearm charge was severed from the remaining charges and was not part of this trial. Subsequently, the State dismissed the charge of felon in possession of a firearm.

"View[ing] the evidence in the light most favorable to the state," we resolve all conflicts and indulge "all permissible inferences therefrom in favor of the verdict." *State v. Sexson*, 1994-NMCA-004, ¶ 11, 117 N.M. 113, 869 P.2d 301 (internal quotation marks and citation omitted). We measure the sufficiency of the evidence against the jury instructions, which become the law of the case. *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883.

B.      Second Degree Murder

{12}    We first address Defendant's argument that there was insufficient evidence identifying him as the shooter. To support a conviction for second degree murder, the State had to prove beyond a reasonable doubt that (1) Defendant killed Sanchez, and (2) Defendant knew his acts created a strong probability of death or great bodily harm to Sanchez or any other human being. *See* UJI 14-211 NMRA; NMSA 1978, § 30-2-1(B) (1994). "The law does not require testimony from a witness who personally saw [a d]efendant at the very moment he actually [killed] his victim." *Flores*, 2010-NMSC-002, ¶ 17. Our Courts have held that circumstantial evidence can be enough to connect a defendant to the commission of a crime. *See State v. Gallegos*, 2009-NMSC-017, ¶ 32, 146 N.M. 88, 206 P.3d 993 (holding that there was sufficient evidence linking defendant to the murder where he was found at the crime scene, as were his duffel bags containing inculpatory evidence); *State v. Gurule*, 2004-NMCA-008, ¶ 39, 134 N.M. 804, 82 P.3d 975 (concluding that there was sufficient evidence for the jury to conclude that defendant was responsible for the fatal stabbing, where he was seen washing the murder weapon and fleeing the crime scene).

{13}    Defendant claims that his conviction "is based only on evidence linking [him] to a green Subaru wagon and separate testimony linking a green Subaru to the murder." We disagree. Not only was there evidence connecting Defendant to the green Subaru that was seen fleeing from the crime scene, there was also evidence placing Defendant at the crime scene in the immediate aftermath of the shooting. Defendant left Parker's apartment within minutes of the shooting, and eyewitnesses observed a bald man (matching Defendant's description) driving the green Subaru while displaying a gun. Several witnesses identified photographs establishing that Defendant drove the same Subaru to the apartment complex that was later seen fleeing from the apartment complex after the shooting. Lastly, Defendant revealed knowledge of the shooting when he called Parker shortly after the shooting asking "what was going on over there." Viewing the evidence in the light most favorable to the State, we hold there was substantial evidence to convict Defendant of second degree murder.

C.      Tampering With Evidence

{14}    We next address whether there was substantial evidence to support Defendant's conviction for tampering with evidence. Defendant maintains that because there was no evidence that he "personally wiped the car clean" there was insufficient evidence that he committed this crime. The State contends that it presented sufficient circumstantial

evidence, which allowed the jury to infer that Defendant tampered with evidence intending to thwart a police investigation.

{15}    To support a conviction for tampering with evidence, the State had to prove beyond a reasonable doubt that Defendant washed the Subaru with the intent of preventing his apprehension, prosecution, or conviction. *See* NMSA 1978, § 30-22-5(A) (2003). Direct evidence is not necessary to prove tampering with evidence. *See State v. Duran*, 2006-NMSC-035, ¶ 16, 140 N.M. 94, 140 P.3d 515. Witness statements "regarding the disposition of evidence may allow a jury to reasonably infer an overt act and intent, as may many other kinds of circumstantial evidence that would tend to prove a defendant acted to tamper with evidence and in so acting intended to thwart a police investigation." *Id.*

{16}    Both parties rely on *Duran* to support their arguments. In *Duran*, our Supreme Court held that there was insufficient evidence of tampering with evidence because there was "no evidence of an overt act to destroy or hide any knife or blood stained clothing, if such clothing did in fact exist[,]" despite the state's contention that a knife or sharp object was used in the commission of the crime and any clothing worn by the attacker would have been blood stained. *Id.* ¶¶ 13, 15. Although recognizing that direct evidence is not "necessary to prove tampering with evidence[,]" *id.* ¶ 16, the *Duran* Court reversed the defendant's conviction based on the State's failure to prove an overt act in circumstances where neither a knife nor blood stained clothing was ever located. *Id.* ¶¶ 15-16.

{17}    Here, the conviction was not based on evidence that only existed theoretically, as was the case with the knife and bloody clothing in *Duran*. Instead, the State furnished evidence of an overt act of tampering—the cleaning of the Subaru and evidence that placed Defendant with the Subaru both prior to and immediately after the shooting—which allowed the jury to reasonably infer that Defendant tampered with evidence and intended to thwart police. Indeed, the evidence established that Defendant drove the green Subaru to the crime scene, fled the scene in what was identified by witnesses as the same green Subaru, and that, within hours of the shooting, law enforcement located the Subaru, washed and wiped of any latent fingerprints and potential DNA evidence. The evidence further revealed that the interior of the vehicle was completely devoid of any evidence establishing ownership of the vehicle. Given the Subaru's connection to the murder scene, Defendant's connection to the Subaru, and the temporal proximity between the murder and the police recovery of the abandoned Subaru, there was sufficient evidence from which the jury could reasonably conclude that Defendant committed the "overt act" of cleaning the Subaru with the intent to prevent his apprehension, prosecution, or conviction. *See id.* ¶ 14. Viewing the evidence in the light most favorable to the verdict, there was substantial evidence to uphold Defendant's conviction for tampering with evidence.

II.    Voluntary Manslaughter Instruction

{18}     Defendant argues the district court erred by failing to instruct the jury on the lesser included offense of voluntary manslaughter. Specifically, Defendant argues the jury could have reasonably inferred the shooting resulted from sufficient provocation because Sanchez had a loaded gun, a witness testified that she heard a "ruckus," and there was no evidence of a preexisting relationship between Defendant and Sanchez. The State responds that because there was no evidence of provocation, the district court did not err in denying a step-down instruction for voluntary manslaughter.

{19}     The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo. *State v. Candelaria*, 2019-NMSC-004, ¶ 31, 434 P.3d 297. "Failure to instruct the jury on a defendant's theory of the case is reversible error only if the evidence at trial supported giving the instruction." *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355. To obtain an instruction on a lesser included offense, "there must be some view of the evidence pursuant to which the lesser offense is the highest degree of crime committed, and that view must be reasonable." *State v. Brown*, 1998-NMSC-037, ¶ 12, 126 N.M. 338, 969 P.2d 313 (alteration, internal quotation marks, and citation omitted). New Mexico courts apply a three-prong analysis in determining whether a district court's failure to instruct the jury on a lesser included offense is reversible error, examining whether:

(1) the lesser offense is included in the greater, charged offense; (2) there is evidence tending to establish the lesser included offense and that evidence establishes that the lesser offense is the highest degree of crime committed; and (3) the defendant has tendered appropriate instructions preserving the issue.

*State v. Jernigan*, 2006-NMSC-003, ¶ 21, 139 N.M. 1, 127 P.3d 537. The first and third factors are not in play here since both sides agree that "voluntary manslaughter is a lesser included offense of second[]degree murder," *id.* ¶ 22, and that the jury instruction issue was preserved below when the State, apparently as the result of an oversight, itself tendered a voluntary manslaughter instruction with its proposed instructions, thereby invoking a ruling on the issue by the district court. Since only the second prong is at issue in this case our inquiry is limited to determining whether there was enough evidence to warrant a voluntary manslaughter instruction.

{20}     There must be evidence of sufficient provocation to give a voluntary manslaughter instruction to the jury. *Brown*, 1998-NMSC-037, ¶ 13. Sufficient provocation is what distinguishes voluntary manslaughter from second degree murder. *See* UJI 14-220 NMRA ("The difference between second degree murder and voluntary manslaughter is sufficient provocation."). "Sufficient provocation" is "any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions." UJI 14-222 NMRA. Sufficient provocation occurs when it would affect an ordinary person's ability to reason and cause a temporary loss of self-control. *Id.* Words alone are insufficient "to arouse the passions such that murder is reduced to manslaughter." *State v. Stills*, 1998-NMSC-009, ¶ 36, 125 N.M. 66, 957 P.2d 51.

{21} The record is devoid of any evidence that emotions were aroused or that Defendant was angry at or in fear of Sanchez. The fact that Sanchez was shot in the back of the head from an intermediate range strongly counters any argument that the shooting was the result of sufficient provocation. No casings were located from Sanchez's firearm nor was there evidence that Sanchez had taunted Defendant or brandished his gun, much less shot his gun at Defendant. Sanchez's mere possession of a firearm, unaccompanied by evidence that Defendant had knowledge of the firearm, is insufficient to raise an issue of sufficient provocation. *See State v. Herrera*, 2014-NMCA-007, ¶ 30, 315 P.3d 343 (holding that there was insufficient evidence of provocation where the defendant did not see the victim's gun and he shot the victim in the back). Thus, we hold that the district court did not err in declining Defendant's request for a voluntary manslaughter instruction.

III. Impeachment of Paula Estrada

{22} Defendant argues the sole reason the State called Estrada was to impeach her with her prior inconsistent statement identifying Defendant as the driver of the Subaru and as the shooter. Defendant claims he preserved this issue when he objected to this testimony on hearsay grounds; however, he also argues that if he did not preserve the issue, the admission of this evidence was fundamental error requiring reversal. Alternatively, Defendant argues the district court erred in failing to provide a limiting instruction, while acknowledging he failed to request such an instruction. The State contends Defendant failed to preserve this issue, and thus, the appropriate standard of review is plain error. The State claims that prior to calling Estrada to testify, it had no knowledge it would have to impeach her since Estrada consistently gave pretrial statements identifying Defendant as the driver of the Subaru and as the shooter. Finally, the State argues that Defendant failed to request a limiting instruction and the district court did not err in failing to sua sponte provide such an instruction.

{23} To preserve an issue for review on appeal, "it must appear that the appellant fairly invoked a ruling of the district court on the same grounds argued in the appellate court." *State v. Garcia*, 2013-NMCA-064, ¶ 37, 302 P.3d 111 (alterations, internal quotation marks, and citation omitted); *see* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). Defendant failed to preserve the issue of whether the State impermissibly called Estrada for the sole purpose of impeaching her because he failed to invoke a ruling by the district court as to this specific issue. As such, we analyze Defendant's claims for plain and fundamental error. *See* Rule 12-321(B)(2)(b), (c) ("This rule does not preclude a party from raising or the appellate court, in its discretion, from considering . . . issues involving . . . plain error [or] . . . fundamental error[.]").

{24} In reviewing a claim for either plain or fundamental error, we must first determine whether an error occurred. *See State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192; *State v. Bregar*, 2017-NMCA-028, ¶ 30, 390 P.3d 212. In applying the doctrine of fundamental error, we exercise our discretion to employ the exception "very guardedly," and apply it "only under extraordinary circumstances to prevent the

miscarriage of justice[.]" *Silva*, 2008-NMSC-051, ¶ 13 (internal quotation marks and citations omitted). The standard of review for fundamental error is whether Defendant's guilt is so doubtful that it would shock the conscience of the court to let the verdict stand. *See State v. Samora*, 2013-NMSC-038, ¶ 17, 307 P.3d 328. Conversely, the plain error doctrine applies to evidentiary errors that affect the substantial rights of a defendant, *see* Rule 11-103 (D), (E) NMRA, and is invoked where the admission of evidence constitutes an injustice creating "grave doubts concerning the validity of the verdict." *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056.

{25}    Rule 11-613 NMRA permitted the State to use Estrada's prior inconsistent statement to attack her credibility. "Generally, however, if a party *knowingly* calls a witness for the primary purpose of introducing a prior statement which otherwise would be inadmissible, impeachment should ordinarily be excluded." *State v. Brown*, 1998-NMSC-037, ¶ 52 (emphasis added) (internal quotation marks and citation omitted); *see id.* ¶ 51 (stating that "impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible" (internal quotation marks and citation omitted)). If the primary purpose of the proffered testimony is to introduce relevant evidence, and not a "back-door attempt to introduce otherwise inadmissible hearsay under the auspices of impeachment," then the district court should allow admission of the evidence. *See State v. Lopez*, 2011-NMSC-035, ¶ 16, 150 N.M. 179, 258 P.3d 458. To determine whether a witness's testimony has a proper primary purpose, the court examines the witness's testimony to determine whether it contains evidence that is both favorable and unfavorable to the proponent. *Id.* ¶ 17. If the State utilized Estrada's testimony to prove any significant fact in the litigation, the State may impeach her with her prior inconsistent statement as to other matters. *See id.* ¶ 18.

{26}    The record does not support Defendant's contention that the State's sole purpose in calling Estrada was to engage in a backdoor attempt to admit her otherwise inadmissible prior out-of-court statements. We can safely conclude the State did not knowingly call Estrada as a witness for the purpose of impeaching her because, based upon her prior statements, it could not have anticipated the need to impeach her. In her prior statements, she consistently identified Defendant as the shooter who drove the Subaru. Additionally, Estrada provided both favorable and unfavorable testimony to the State. The testimony that she was Sanchez's neighbor, had a view facing the parking lot, heard a "ruckus" and then observed a dark-colored vehicle with a male driver leaving the apartment complex was favorable to the State. However, her testimony that there was a female passenger in the Subaru and that the Subaru was not speeding out of the apartment complex contradicted the testimony of Sanchez's sisters and was unfavorable to the State. Our examination of the record reveals no error in the admission of Estrada's testimony.

{27}    We next consider Defendant's argument that the district court erred by not *sua sponte* instructing the jury that it was solely to consider Estrada's prior inconsistent statement for impeachment purposes. "If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—

the court, *on timely request*, must restrict the evidence to its proper scope and instruct the jury accordingly." Rule 11-105 NMRA (emphasis added); *see* UJI 14-5009 NMRA (evidence admitted for a limited purpose). The Use Notes for UJI 14-5009 provide that "[*u*]*pon request*, the court must instruct the jury that evidence is admitted for a limited purpose. This is a general instruction. . . . Use only if jury was admonished at the time the evidence was admitted." (Emphasis added.) As specified in the use notes, the district court should give a limiting instruction upon Defendant's request however, here, Defendant made no such request. *See State v. Lopez*, 1997-NMCA-075, ¶ 18, 123 N.M. 599, 943 P.2d 1052 ("[I]t is well established that when evidence is admitted for the wrong purpose, there is no error when the defendant does not request a limiting instruction.").

{28}    However, assuming arguendo that the district court erred in permitting Estrada's testimony or in failing to give a limiting instruction, the error did not rise to the level of plain or fundamental error. There was substantial evidence to convict Defendant apart from Estrada's testimony. Notably, the evidence placed Defendant at the crime scene with a firearm, multiple witnesses heard gunshots minutes after Defendant left Parker's apartment, and witnesses described Defendant's Subaru as the vehicle fleeing the crime scene. We hold that because there was not "an injustice that creates grave doubts concerning the validity of the verdict[,]" there was neither plain nor fundamental error in this case. *State v. Paiz*, 1999-NMCA-104, ¶ 28, 127 N.M. 776, 987 P.2d 1163 (internal quotation marks and citation omitted).

IV.    Ineffective Assistance of Counsel

{29}    For the first time in his reply brief, Defendant raises the issue of ineffective assistance of counsel based on his trial attorney's failure to request a limiting instruction. He did not raise the issue in his brief in chief nor did the State on its own raise the issue of ineffective assistance of counsel. "A reply brief . . . shall reply only to arguments or authorities presented in the answer brief." Rule 12-318(C) NMRA. *see State v. Martinez*, 2005-NMCA-052, ¶ 7, 137 N.M. 432, 112 P.3d 293 (declining to address a defendant's assertions raised for the first time in his reply brief because it deprived the state an opportunity to rebut the argument as contemplated by the rules). Because Defendant failed to raise the issue of ineffective assistance of counsel until the filing of his reply brief, the State did not have an opportunity to rebut Defendant's arguments. We therefore decline to address Defendant's claim of ineffective assistance of counsel.

CONCLUSION

{30}    For the foregoing reasons, we affirm.

{31}    IT IS SO ORDERED.

BRIANA H. ZAMORA, Judge

WE CONCUR:

J. MILES HANISEE, Judge

JACQUELINE R. MEDINA, Judge