NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

NICHOLAS KRENTIRAS, *Appellant.*

No. 1 CA-CR 13-0939
FILED 09-04-2014

Appeal from the Superior Court in Maricopa County
No. CR2012-157169-001
The Honorable Lisa Ann Vandenberg, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Spencer D. Heffel
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Donn Kessler delivered the decision of the Court, in which Presiding
Judge Kenton D. Jones and Judge Margaret H. Downie joined.

---

**K E S S L E R**, Judge:

**¶1**        Nicholas Krentiras filed this appeal in accordance with *Anders
v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d
878 (1969), following his conviction of one count of endangerment, two
counts of assault, one count of criminal trespass in the third degree, and one
count of disorderly conduct.  Finding no arguable issues to raise, Krentiras's
counsel requested that this Court search the record for fundamental error.
Krentiras was given the opportunity to, but did not submit a *pro per*
supplemental brief.   For the reasons that follow, we affirm Krentiras's
convictions and sentences.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**        According to testimony at trial, in November 2012, J.G. had
an altercation with Krentiras while driving home in Fountain Hills.   In
order to make a right hand turn, J.G. admitted to cutting Krentiras off,
forcing him to slam on his brakes.

**¶3**        After making her turn, J.G. realized that Krentiras was
following close behind her, flashing his high beams.  Krentiras eventually
passed J.G., stopped his vehicle in the roadway, and began to exit his truck.
J.G. drove around him, and proceeded home.

**¶4**        Krentiras followed J.G. into her neighborhood.  He sped up to
maneuver his truck between J.G. and her house, making it impossible for
her to pull into her driveway.  Krentiras exited his truck, began yelling at
J.G., and slammed both of his hands on the hood of her vehicle.  Afraid to
get out of her car, J.G. decided to circle the neighborhood again and called
her father, L.G., on her cell phone to ask him to come outside.  As J.G. circled
the block, Krentiras followed, tailgating her in his truck.

**¶5**        When J.G. pulled up to her house the second time, L.G. was
waiting outside, and J.G. was able to pull into the driveway.  J.G. remained
in her vehicle for the remainder of the incident.  Krentiras parked in front
of the driveway, exited his truck, and began yelling.   L.G. described

Krentiras as "irate" and "enraged." L.G. told Krentiras to "back off" and "go home." Krentiras began to walk away, but he then turned back around and started yelling again. L.G. told Krentiras to leave and get off the property. Krentiras turned back toward his car a second time, but before reaching his truck, turned and headed toward J.G. L.G. quickly positioned himself between Krentiras and J.G., and again asked Krentiras to leave.

¶6         Krentiras started to walk toward his truck a third time. Again Krentiras turned back around, and this time, grabbed L.G. on the hand, scratching his wrist. L.G. told J.G. to call the police, and Krentiras left the scene. L.G. gave the police Krentiras's license plate number, and Krentiras was arrested the following day.

¶7         Krentiras testified that J.G. was driving recklessly, and he followed her in order to get her license plate number. He further admitted that he did touch L.G. on the hand, but claimed he only did so because he thought L.G. was going to hit him.

¶8         After a five-day trial, Krentiras was convicted of Count 1: endangerment; Count 3: assault; Count 4: assault; Count 5: criminal trespass in the third degree; and Count 7: disorderly conduct. He was placed on eighteen-months' probation for Counts 1 and 7, and twelve-months' probation for Counts 3, 4, and 5. The court ordered the sentence on each conviction to be served concurrently.

¶9         Krentiras filed a timely appeal. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, as well as Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2003), 13-4031 (2010), and -4033(A)(1) (2010).

**STANDARD OF REVIEW**

¶10         In an *Anders* appeal, this Court must review the entire record for fundamental error. *State v. Richardson*, 175 Ariz. 336, 339, 857 P.2d 388, 391 (App. 1993). Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005) (quoting *State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984)). To obtain a reversal, the defendant must also demonstrate that the error caused prejudice. *Id*. at ¶ 20.

**DISCUSSION**

¶11 After careful review of the record, we find no grounds for reversal of Krentiras's convictions or sentences. The record reflects Krentiras had a fair trial and all proceedings were conducted in accordance with the Arizona Rules of Criminal Procedure. Krentiras was present and represented by counsel at all critical stages of trial, was given the opportunity to speak at sentencing, and the sentences imposed were within the range for Krentiras's offenses.

¶12 In reviewing the sufficiency of evidence at trial, "[w]e construe the evidence in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant." *State v. Greene*, 192 Ariz. 431, 436, ¶ 12, 967 P.2d 106, 111 (1998). "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996) (quoting *State v. Scott*, 113 Ariz. 423, 424-25, 555 P.2d 1117, 1118-19 (1976)).

¶13 There is evidence in the record to support the jury's conviction of Krentiras for the crime of endangerment. To be convicted of endangerment, the State had to prove that Krentiras recklessly endangered J.G. with a substantial risk of physical injury. *See* A.R.S. § 13-1201 (2010). There was testimony that during the course of the encounter between Krentiras and J.G., Krentiras tailgated J.G. at a high rate of speed, flashed his high beams, swerved behind her, maneuvered around her vehicle to stop his truck in front of hers, and followed her around her neighborhood. Based on this testimony, the jury could have decided that Krentiras's behavior created a substantial risk of an accident and physical injury as they were driving on the roadway.

¶14 There is evidence in the record to support the jury's conviction of Krentiras for the first count of assault. To be convicted of assault, the State had to prove that Krentiras intentionally placed J.G. in reasonable apprehension of physical injury. *See* A.R.S. § 13-1203(A)(2) (2010). During the trial, the State presented evidence that Krentiras attempted to get to J.G., who was parked in the driveway. During the encounter, Krentiras was yelling and cursing, and was described as acting belligerent and enraged. In addition, J.G. testified that she was scared and "thought this man was going to kill [her]." Based on this testimony, there was sufficient evidence for the jury to find that Krentiras intentionally placed J.G. in reasonable apprehension of physical injury.

¶15          There is evidence in the record to support the jury's conviction of Krentiras for the second count of assault. To be convicted on this count of assault, the State had to prove that Krentiras knowingly touched L.G. with the intent to injure, insult, or provoke him. *See* A.R.S. § 13-1203(A)(3). Here, there was testimony that Krentiras grabbed L.G. on the hand, scratching his wrist. Based on the testimony of Krentiras's belligerent and enraged behavior, the jury could have concluded that he touched L.G. with the intent to injure, insult, or provoke him. As a result, there was sufficient evidence for the jury to convict Krentiras on this count.

¶16          There is evidence in the record to support the jury's conviction of Krentiras for criminal trespass in the third degree. To be convicted, the State had to prove that Krentiras knowingly entered or remained unlawfully on L.G.'s property after a reasonable request to leave by L.G. *See* A.R.S. § 13-1502(A)(1) (Supp. 2013). L.G. testified that Krentiras walked onto his property towards himself or J.G. multiple times. L.G. also testified that he asked Krentiras to leave several times throughout the encounter. Based on this testimony, there was sufficient evidence for the jury to find Krentiras guilty of criminal trespass in the third degree.

¶17          Finally, there is enough evidence in the record to support the jury's conviction of Krentiras for disorderly conduct. To be convicted of disorderly conduct, the State had to prove that Krentiras intentionally or knowingly disturbed the peace or quiet of a neighborhood, family or person by making unreasonable noise. *See* A.R.S. § 13-2904(A)(2) (2010). To be convicted of disturbing the peace of a neighborhood, the evidence must be evaluated in terms of a reasonable person standard. *See In re Julio L.*, 197 Ariz. 1, 3, ¶ 8, 3 P.3d 383, 385 (2000) ("[A]n objective standard, in lieu of proof regarding the effect on a specific person, can be used when a defendant is charged with making noise that disturbed the peace of a neighborhood."). An individual victim's "peace" can be disturbed if the victim is "in repose of mind and peaceful intent" prior to the commencement of the disorderly act, or if during a period of emotional upset, the defendant's action "excites disquietude or fear." *State v. Miranda*, 198 Ariz. 426, 428 n.2, ¶ 11, 10 P.3d 1213, 1215 n.2 (App. 2000) (citations omitted). Here, L.G. testified that when J.G. called him to inform him she was being chased, L.G. had been relaxing with his wife and watching television. Both J.G. and L.G. testified that during the encounter, Krentiras was yelling and cursing at them on their driveway in a belligerent and enraged manner. Krentiras also testified that he was "pretty upset" and "[he] yelled" and "[he] swore." Based on the cumulative testimony, there was sufficient evidence for the jury to find Krentiras knowingly disturbed the peace of L.G., J.G., and the neighborhood.

**¶18**        In comparing the evidence in the record to the elements listed in the statutes, we find there was sufficient evidence to support the jury's conviction of Krentiras for endangerment, two counts of assault, criminal trespass in the third degree, and disorderly conduct.

## CONCLUSION

**¶19**        For the foregoing reasons, we affirm Krentiras's convictions and sentences. Upon the filing of this decision, defense counsel shall inform Krentiras of the status of his appeal and his future appellate options. Defense counsel has no further obligations, unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). Upon the Court's own motion, Krentiras shall have thirty days from the date of this decision to proceed, if he so desires, with a *pro per* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
FILED: gsh