3 P.3d 383

**In re JULIO L.**

**No. CV–99–0377–PR.**

Supreme Court of Arizona,
En Banc.

June 1, 2000.

Richard M. Romley, Maricopa County Attorney By: Patricia Nigro and Janet A. Napolitano, Arizona Attorney General By: Paul J. McMurdie, Phoenix, Attorneys for the State of Arizona.

Dean W. Trebesch, Maricopa County Public Defender By: Joel M. Glynn, Phoenix, Attorneys for Julio L.

## AMENDED OPINION

FELDMAN, Justice.

¶ 1    We granted review to determine the grounds on which a student may be prosecuted for "disorderly conduct" on an allegation of engaging in "seriously disruptive behavior" in violation of A.R.S. § 13–2904(A)(1). We conclude the evidence was insufficient to prove that the juvenile's improper and offensive behavior violated the criminal law. We thus reverse the decision of the trial court and vacate the decision of the court of appeals.

¶ 2    We have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3).

## FACTS AND PROCEDURAL HISTORY

¶ 3    The juvenile, Julio L., age 15, was a student at an alternative middle school for children who are not successful in a regular middle school setting due to behavioral problems. After he failed to comply with the school uniform requirement and talked, laughed, and giggled during a morning class, the school's director-principal, Sandra Ferrero, was called. She asked Julio twice to talk with her outside the classroom during the opening session at the school. Julio ignored her requests to wait for her outside his homeroom during the transition time between classes. Instead, he entered his homeroom and sat down. Ferrero asked him a third time to talk to her outside of the classroom. Julio looked directly at her and said, "F— you." He then kicked a plastic molded chair next to him, which tipped over but did not strike anyone. A few other students were present in the room, although the homeroom class was not yet in session.

¶ 4    The state filed a delinquency petition against Julio, alleging disorderly conduct in violation of A.R.S. § 13–2904(A), which provides in part:

Disorderly conduct; classification.

A person commits disorderly conduct if, *with intent to disturb the peace or quiet of a neighborhood, family or person,* or with knowledge of doing so, such person:

1.    *Engages* in fighting, violent or *seriously disruptive behavior* [.] [1]

A.R.S. § 13–2904(A) (emphasis added). The juvenile court trial judge adjudicated Julio delinquent, finding that his conduct constituted "seriously disruptive behavior." Julio appealed, contending there was insufficient evidence of seriously disruptive conduct, that no evidence existed that anyone was actually offended, and that his First Amendment right to free speech was violated. In a split decision, the court of appeals affirmed, holding that the evidence established Julio's seriously disruptive conduct, that proof of actual disturbance is not required, that Julio's conduct was incompatible with the function and purpose of the school, and that Julio's intentional misbehavior was not protected by the First Amendment. *See In re Julio L.,* 195 Ariz. 482, 990 P.2d 683 (1999).

¶ 5    The dissent noted that Julio was charged with disturbing the peace of a specific person, namely Ms. Ferrero, thus evidence of actual disturbance was required. *See id.* at 487, 990 P.2d at 688 (Noyes, J., dissenting). Although Julio's behavior was offensive to the extent that school discipline was appropriate, the dissent found insufficient evidence to conclude that it rose to the level of *seriously* disruptive behavior necessary to support criminal charges. *See id.* The freedom of speech issues were not addressed because the trial judge specifically stated that the use of profanity was not the basis of the conviction. *See id.*

## DISCUSSION

¶ 6    To determine whether sufficient evidence existed to support adjudicating Ju-

1.    The other classifications of disorderly conduct are:
    2.    Makes unreasonable noise; or
    3.    Uses abusive or offensive language or gestures to any person present in a manner likely to provoke immediate physical retaliation by such person; or
    4.    Makes any protracted commotion, utterance or display with the intent to prevent the transaction of the business of a lawful meeting, gathering or procession; or
    5.    Refuses to obey a lawful order to disperse issued to maintain public safely in dangerous proximity to a fire, a hazard or any other emergency; or
    6.    Recklessly handles, displays or discharges a deadly weapon or dangerous instrument.

lio delinquent for committing disorderly conduct under A.R.S. § 13–2904(A)(1), we must consider admissible evidence in the light most favorable to supporting the verdict. *See State v. Fulminante,* 193 Ariz. 485, 492–93, 975 P.2d 75, 82–83 (1999).

### A. School Discipline v. Crime

¶ 7 The question is whether the juvenile's behavior crossed the line from a case for school discipline to one for criminal prosecution. Obviously, not every violation of public decorum or of school rules gives legal cause for criminal adjudication, but very little guidance currently exists to define this boundary in Arizona or any other jurisdiction. We must determine here 1) whose peace or quiet Julio disturbed and 2) whether his conduct rose to the level of "seriously disruptive" behavior. A.R.S. § 13–2904(A)(1). Because the trial judge did not base his ruling on Julio's profanity and because Julio was not charged under A.R.S. § 13–2904(A)(3), we need not and do not consider the First Amendment arguments raised below. Whether or not Julio's speech was protected, we conclude that, as a whole, his conduct did not amount to seriously disruptive behavior.

### B. Proof of Whose Peace was Disturbed

██ ¶ 8 Citing *State v. Johnson,* 112 Ariz. 383, 542 P.2d 808 (1975), the court of appeals stated that "evidence of actual disturbance is not required." *Julio L.,* 195 Ariz. at 484, 990 P.2d at 685. However, *Johnson* is distinguished. In *Johnson,* the defendant was charged with disturbing the peace of a *neighborhood* by making a "loud and unusual noise." *Johnson,* 112 Ariz. at 384, 542 P.2d at 809. Two police officers heard the noise and testified to its level and nature. No resident of the neighborhood needed to give testimony because the officers could adequately describe its loud and disturbing nature. The court there merely said that an objective standard, in lieu of proof regarding the effect on a specific person, can be used when a defendant is charged with making noise that disturbed the peace of a neighborhood. *Id.* at 385, 542 P.2d at 810. In the present case, however, Ferrero was the victim named in the charges against Ju-

lio. Thus, the state must prove that Ferrero's peace was indeed disturbed. The state could not have argued that the peace of the school was disrupted. This incident took place between classes and with few observers. The testimony does not establish, and the state did not charge, that any class or school function was disturbed or affected by Julio's cursing or kicking the chair. The case thus differs from *In the Interest of D.A.D.,* 224 Ga.App. 527, 481 S.E.2d 262 (1997), cited by the court of appeals, which involved a student who shouted obscenities and slapped a teacher *during* class and in front of other students, disrupting the peace of the students individually and the class as a whole.

¶ 9 Turning to the actual charge, we note that Ferrero has 18 years of experience as a teacher and administrator. She has been trained to discipline children in a non-confrontational manner and to depersonalize comments made in a disciplinary situation. The school is an alternative one for children not successful in the standard school setting. Behavioral problems such as verbal aggression and acting out are not unusual. One of Ferrero's duties as an administrator is to handle disciplinary matters like Julio's outburst. Thus, her job functions could not have been seriously disrupted. To the contrary, she was performing her duties in dealing with Julio's behavior. She stated, in fact, that she was not personally offended by Julio's conduct, but only "administratively offended," and dealt with this by suspending Julio from school. We cannot say, therefore, that Ferrero's peace was disturbed. Even if the state had alleged and proven that Ferrero's peace was disturbed, the question of whether Julio's conduct rose to the level of "seriously disruptive" behavior would remain.

### C. Seriously Disruptive Behavior

██ ¶ 10 There is a difference between merely rude or offensive behavior and criminal conduct. The subsection in question criminalizes behavior only when it involves fighting or violence or is seriously disruptive. *See* A.R.S. § 13–2904(A)(1). Ferrero stated that she did not feel physically provoked or frightened by Julio—she realized that he was

merely being defiant. Only the seriously disruptive category of behavior has been charged here.

¶ 11 Under the *ejusdem generis* principle, unless contrary legislative intent is apparent, when a general term follows specific terms in a statute, the general term is interpreted as of the same class or type as the specific terms. *See Hughes v. Industrial Comm'n*, 188 Ariz. 150, 153, 933 P.2d 1218, 1221 (1996). Thus, "seriously disruptive" should be analyzed in light of the first two categories of behavior. To "disrupt" means "to throw into disorder or turmoil, ... to interrupt to the extent of stopping." WEBSTER'S DICTIONARY 656 (3d ed.1971). The statute requires the disruption to be "serious"—something to "cause considerable distress, anxiety or inconvenience" *Id.* at 2073. We construe "seriously disruptive behavior" to be of the same general nature as fighting or violence or conduct liable to provoke that response in others and thus to threaten the continuation of some event, function, or activity. The evidence presented at trial was simply insufficient to prove Julio's conduct rose to this level.

¶ 12 The present case is remarkably similar to another recently decided in the same division of the court of appeals, but in which the opposite conclusion was reached. In the case of *In re Louise C.*, 307 Ariz. Adv. Rep. 11, 197 Ariz. 84, 3 P.3d 1004 (1999), the juvenile was charged with intentionally or knowingly disturbing the peace of her high school assistant principal by saying, "F—— this. I don't have to take this s——.... F—— you. I don't have to do what you tell me." She then slammed the door and walked out of the assistant principal's office, in which the principal, assistant principal, and another student were discussing an earlier disagreement between the two students. *Id.* Though the principal and assistant principal were highly offended by the juvenile's words, neither wanted to physically retaliate in any way and no one outside the office

heard the exchange. Thus, the court found that neither "fighting words," violence, nor "seriously disruptive behavior" was involved. *Id.* The court held, therefore, that the state did not prove criminal charges under either A.R.S. § 13–2904(A)(1) or A.R.S. § 13–2904(A)(3).[2] *See id.*

¶ 13 We see no real distinction between the operative facts of the two cases. We do not condone the type of behavior in question, but must keep in mind the difference between civil and criminal conduct. Our laws do not make criminals out of adults or juveniles just because they act offensively or rudely or lack respect and control. The type of conduct in this case does not become criminal under our current statutes unless it disturbs the peace of someone by seriously disrupting something. In the present case, the school administrator was not assaulted, did not feel threatened, was not provoked to physically retaliate, and did not feel the need to protect herself. The conduct did not impact the normal operation of the school. In both this case and *Louise C.*, the school administrator suspended the student in accordance with school policy. If further legal consequences are to result, the legislature must provide specific prohibitions. There is a statute making knowing "abuse" of a teacher or other school employee a misdemeanor offense. See A.R.S. § 15-507. However, Julio was not charged under this statute. Thus, we do not discuss the criteria necessary to justify a finding of guilt under this statute.[3]

¶ 14 We are, of course, quite aware that the schools need the support of our legal system. Under the current statutes, however, we cannot equate a child's acting out through cursing or through angry or defiant words and actions with conduct proscribed by the current criminal statute. We will not attempt to do so by stretching the statute to punish school behavioral problems of a type that, though unfortunately all too common,

**2.** ARS § 13–2904(A)(3) criminalizes use of offensive language in a manner likely to provoke "immediate physical retaliation."

**3.** As first enacted in 1901, the predecessor of A.R.S. § 15-1507 made it a crime to knowingly "insult or abuse" a teacher. However, when the statute was modified in 1989, the reference to insults was deleted and other school employees were added to its coverage.

neither injure or threaten any person nor seriously disrupt any school class or function.

### D. The Dissent

¶ 15   The dissent argues that the principal was seriously disrupted from "doing what it was she had intended to do" because she only wanted to talk to Julio and instead had to remove him from the room. Dissent at ¶ 19. The argument is circular. The principal intended to handle Julio's misbehavior in the classroom. At first she was unsuccessful, but eventually she succeeded in removing him. Handling such problems was part of her job. Her job performance was not interrupted. She said behavior like Julio's was not unusual in the alternative school.

¶ 16   Nor is the dissent correct in stating that the principal "needed the help of a police officer." Dissent at ¶ 21. After Julio cursed and kicked the chair, the principal said "that's an officer referral—let's go." Julio went, and he and the principal walked down the hallway to the principal's office. The principal needed no help from the officer to remove Julio or "control" him. *Id.* She referred Julio to the officer only after *she* removed him from the classroom.

¶ 17   Indeed, if there was any disruptive conduct in this case, it occurred before the principal arrived when, during class, Julio was talking, giggling, and laughing. The class was disrupted by this, and Ms. Ferrero had to be called. This conduct was not charged, nor do we believe the criminal statutes contemplate controlling such classroom behavior—which is not uncommon and neither threatened nor harmed anyone—by charging the malefactor with a crime and referring him to juvenile court. Nor would common sense allow such a method of handling childish, impudent, or "defiant" (as the principal described it) behavior. Nor is it sensible to compare this incident to assault on a police officer. Dissent at ¶ 20. No one was assaulted and no one was threatened with assault. School resource officers, like the officer in question, are on campus to prevent crime. The mere fact that an incident is reported to an officer is not grounds for filing a criminal charge.

### CONCLUSION

¶ 18   The juvenile court's adjudication is reversed and the opinion of the court of appeals is vacated. We remand for further proceedings consistent with this opinion.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice Chief Justice, and RUTH V. McGREGOR, Justice.

MARTONE, Justice, dissenting.

¶ 19   I believe the evidence was sufficient to support a finding that the conduct here, in the context of a school setting, was seriously disruptive within the meaning of A.R.S. § 13–2904(A)(1). The principal told Julio that she wanted to talk to him about his behavior that morning and his failure to wear his uniform. Julio said "fuck you" to the principal, kicked over the chair next to him, and left the classroom. The principal was not only offended in her professional capacity, but was also disrupted from doing what it was she had intended to do. Her focus had to turn from talking to Julio about his behavior and not wearing the school uniform, to removing him as quickly as possible from the classroom.

¶ 20   The majority says that her job functions were not seriously disrupted because she was performing her duties in dealing with Julio's behavior. *Ante,* at ¶ 9. But this is like saying a police officer cannot be assaulted because it is his job to deal with criminals. Her effort to talk to Julio about his behavior and his dress was disrupted. Once Julio kicked the chair, she said "that's an officer referral, come on, let's go." Tr. Apr. 21, 1998 at 8. She thought it pretty serious to refer it to an officer. She had to then divert all her attention on Julio in order to get him out of the classroom.

¶ 21   This principal thought she needed the help of a police officer. It strikes me that whenever a teacher in an American classroom reasonably believes she needs the help of the police in order to control a student, and is thereby diverted from what she was doing, the evidence would be sufficient to support a finding of serious disruption.

**6**

Here, the trial judge so found. For the reasons stated by the court of appeals, *In re Julio L.*, 195 Ariz. 482, 990 P.2d 683 (1999), I would affirm that judgment. A teacher ought not have to wait for more violence to invoke the assistance of the juvenile justice system.