This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.                                                      **NO. 31,501**

**CARLEOUS McDANIEL**,

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Neil Candelaria, District Judge**

Hector H. Balderas, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alavarado, Chief Public Defender
Nicole S. Murray, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VIGIL, Chief Judge.**

**{1}** Defendant Carleous McDaniel appeals his convictions for attempted first degree murder and four counts of aggravated battery. We affirm in part, reverse in part, and remand.

**{2}** On the afternoon of December 31, 2008, (New Year's Eve) Defendant called his ex-wife Kimberly Davison to ask if he could go to her home to visit their children. She agreed. That same day, Davison, her boyfriend Anthony Hicks, and Terrence Turner decided to have a small New Year's Eve party at Davison's home.

**{3}** Alicia Coleman, Adrian Lewis, Nakisha Alexander, Katrina Bustos, Turner, Hicks, Davison, and several children attended the party. Everyone at the party was drinking alcohol except Davison. Coleman and Hicks had been drinking since early in the afternoon. The party guests described Hicks as "sloppy drunk." At one point Hicks knocked the Christmas tree down while dancing.

**{4}** When Defendant initially arrived, Coleman went to his car and spoke with him. She told Defendant that they did not want any problems. Defendant responded that he did not go there to cause any problems, he only wanted to see his kids. When Defendant entered Davison's home he greeted his children. Defendant held Josiah, eighteen months, and Tamar, five years old, sat on his lap. His attention was toward the children.

{5}     At one point, Defendant left the party with Turner and Lewis to buy a cigar. While in the car, Lewis spotted a gun in Defendant's pocket. When they returned the three men were talking and laughing. They then went outside to smoke marijuana.

{6}     Later Defendant was sitting on the couch holding Tamar and Josiah. Davison tried to talk to him about the children. At some point Hicks fell into Defendant while he was holding Josiah. Defendant said to Hicks, "Look, please be careful," and "You're wasted."

{7}     Defendant and Lewis were talking and then they began to "tussle." Defendant claims that Lewis was threatening him with a broken bottle, but no witnesses testified to Lewis holding anything in his hands. Defendant then fired a shot at Lewis. The shot hit Lewis in the face knocking him to the ground. Lewis then stood up and ran out the door. Lewis testified to Defendant firing multiple shots in the house. However, Defendant testified to firing only one shot, Alexander testified to Defendant firing shots at Lewis outside, and no other witnesses testified to hearing gun shots. Lewis and Alexander also testified that Defendant chased Lewis outside and then returned to the house.

{8}     Then Defendant and Hicks began arguing in the hallway. Defendant testified that Hicks pulled out a pistol. Davison heard Hicks say, "I'm not tripping on you. Those are your kids." Coleman was standing between the two men. She bent down

to pick up her child, and Defendant fired a shot at Hicks's head. Defendant ran out the door and left the scene.

**{9}** Davison and her guests called 911. Police officers and an ambulance arrived.

**{10}** Defendant was arrested on January 12, 2009, and indicted by a grand jury on January 27, 2009. The public defender assigned three attorneys to Defendant's case over the twenty-seven month period he awaited trial. Defendant stood trial on April 12, 2011. A jury convicted defendant of attempted first degree murder, aggravated battery causing great bodily harm, and aggravated battery with a deadly weapon towards Hicks; and aggravated battery causing great bodily harm and aggravated battery with a deadly weapon towards Lewis. Defendant brings five arguments on appeal: (1) a delay of twenty-seven months from arrest until trial violated his constitutional right to a speedy trial; (2) the multiple convictions violate the prohibition against double jeopardy; (3) the evidence was insufficient to support a finding beyond a reasonable doubt; (4) he was denied effective assistance of counsel; and (5) he was denied his right to testify before the grand jury. We address each issue.

**I.      Right to a Speedy Trial**

**{11}** Defendant appeals his convictions arguing that a delay of twenty-seven months from arrest until trial violated his constitutional right to a speedy trial.

{12} "Violation of the speedy trial right is only determined through a review of the circumstances of a case[.]" *State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387. We apply the four-factor *Barker* balancing test to determine if there was a violation of Defendant's right. *Id.*

**A.    The Length of Delay**

{13}    Under the first prong of the *Barker* analysis, we determine whether the length of the delay to bring the defendant's case to trial is "presumptively prejudicial." *Id.* ¶ 15. "The length of delay serves two purposes under the speedy trial analysis." *State v. Spearman*, 2012-NMSC-023, ¶ 20, 283 P.3d 272. First, it triggers the analysis of the speedy trial factors and, second, it is also a speedy trial factor to be weighed in the overall balance. *Id.* "[T]he greater the delay the more heavily it will potentially weigh against the State." *Garza*, 2009-NMSC-038, ¶ 24. "[T]he burden of persuasion rests with the State to demonstrate that, on balance, the defendant's speedy trial right was not violated." *Id.* ¶ 16.

{14}    In *Garza*, our Supreme Court adopted benchmarks for determining presumptive prejudice: for a simple case, twelve months of delay becomes presumptively prejudicial; for an intermediate case, fifteen months is presumptively prejudicial; and for a complex case, eighteen months is presumptively prejudicial. *Id.* ¶ 48. In distinguishing between the level of complexity for each case, we have stated that

"simple cases require less investigation and tend to involve primarily police officer testimony during the trial." *State v. Laney*, 2003-NMCA-144, ¶ 14, 134 N.M. 648, 81 P.3d 591 (internal quotation marks and citation omitted). Cases of intermediate complexity "involve numerous or relatively difficult criminal charges and evidentiary issues, numerous witnesses, expert testimony, and scientific evidence." *Id.*

{15} Defendant argues that this is a simple case because the trial lasted just over three days, there were six civilian witnesses including Defendant, and law enforcement officers that were called as witnesses. Defendant argues that although there was some conflicting testimony, all the witnesses described a discrete series of events that occurred over the course of the single evening. Defendant also points out that there were no expert witnesses and no significant pretrial motions except for motions in limine.

{16} In contrast, the State argues that this case is complex or intermediate-complex. The State argues that with voir dire and jury deliberations the trial was five days. The State asserts that the seriousness of the victims' injuries and their recovery required additional time to schedule and coordinate interviews. Hicks suffered brain damage making it difficult for him to understand and communicate clearly, and Lewis was arrested and indicted on separate charges which delayed his witness interview.

{17} In *Laney*, we determined that case fell "in the high end of the simple complexity range." 2003-NMCA-144, ¶ 15. In *Laney*, the defendant was charged with vehicular homicide, great bodily injury by vehicle, leaving the scene of an accident, receiving or transferring a stolen vehicle, and reckless driving. *Id.* ¶ 2. Both sides provided expert testimony including a forensic pathologist and accident reconstructionist, and the use of DNA evidence was contemplated. *Id.* ¶¶ 5, 12. We held that although many facts were stipulated, the ultimate question of who was driving was contested and required ten witnesses, including an accident reconstruction expert and two experts in forensic pathology. *Id.* ¶ 15.

{18} We view the present case as less complex than *Laney* and determine that it is a simple case. Here, only eyewitnesses, law enforcement officers, emergency room doctors, and Defendant testified. Expert witness testimony was not required. The sequence of events on the night in question were generally corroborated among all the witnesses and there was no dispute as to who committed the illegal acts since Defendant testified that he shot Hicks and Lewis.

{19} The case was not tried until twenty-seven months after Defendant was indicted. As a simple case, twenty-seven months exceeded the twelve-month benchmark by fifteen months. Because "the greater the delay the more heavily it will potentially

7

weigh against the State[,]" *Garza*, 2009-NMSC-038, ¶ 24, we weigh the length of the delay against the State.

**B.      The Reasons for the Delay**

{20}      "Closely related to [the] length of delay is the reason the government assigns to justify the delay." *Id.* ¶ 25 (internal quotation marks and citation omitted). Defendant argues that the State's requests for continuances to conduct plea negotiations, rescheduling witness interviews, and a heavy caseload resulting in conflicting trial scheduling should weigh against the State. However, he also argues that the State's continuances allowing Defendant's new attorney time to prepare should not weigh against the State.

{21}      The reasons for the delay may "heighten or temper the prejudice to the defendant caused by the length of the delay." *State v. Maddox*, 2008-NMSC-062, ¶ 13, 145 N.M. 242, 195 P.3d 1254, *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48. This factor looks at the "reason the government assigns to justify the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). *Barker v. Wingo* described three types of delays: (1) "[a] deliberate attempt to delay the trial in order to hamper the defense[, which is] weighted heavily against the government[;]" (2) "negligence or overcrowded courts . . . [, which are] weighted less heavily but nonetheless should be considered since the ultimate

8

responsibility for such circumstances must rest with the government rather than with the defendant;" and (3) "a valid reason, such as a missing witness, should serve to justify appropriate delay." 407 U.S. 514, 531 (1972); *Garza*, 2009-NMSC-038, ¶¶ 25-27.

{22}     The State argues that for the first eighteen months after the indictment, the parties proceeded in a customary manner. The State contends that it was ready for trial on July 26, 2010.

{23}     We discuss the delays for plea negotiations, scheduling witnesses, administrative caseload, and allowing the new defense attorney time to prepare.

**1.     Plea Negotiations**

{24}     Defendant argues the State's first two requests for continuance were to allow time for plea negotiations, which is not a valid reason for delaying trial. He points us to *Maddox* where the Supreme Court said, "plea negotiations are not an excuse for a delay in the prosecution of a case." 2008-NMSC-062, ¶ 25. On the other hand, the State argues that plea negotiations are a part of judicial efficiency and aimed at conserving the court's resources. The State argues that it cannot have the obligation to prepare for trial while Defendant is considering a plea offer.

{25}     "[A]bsent some act of bad faith or some prejudice to the defendant, plea negotiations are themselves not a factor to be held against either party." *Id.* ¶ 24

(internal quotation marks and citation omitted). However, plea negotiations are also "not an excuse for a delay in the prosecution of a case" and "do not constitute a valid reason for suspending the defendant's right to a speedy trial." *Id.* ¶ 25. In *Maddox*, the state made a plea offer, and nearly three months later, defense counsel responded. *Id.* ¶ 26. While the burden of bringing a case to trial is on the State, the defendant is also required to timely respond to plea offers. *Id.* The Court held that three months was too long of a delay and weighed it slightly against the State. *Id.*

**{26}** Here, the State's July 13, 2009 motion for continuance stated that the State "will be making a plea offer within the next week [and if] the offer is rejected additional time will be necessary to schedule and prepare for trial." At that point, the trial was scheduled for August 31, 2009, and the State requested the trial be rescheduled for November 2009. Defendant's attorney at the time, stipulated to the motion. The State's next motion for continuance was on October 16, 2009. The State recited that it had made a plea offer on October 13, 2009, and Defendant's attorney requested four weeks to discuss the offer with Defendant. Defense counsel "[did] not object" to the motion.

**{27}** The requests demonstrate the State and defense counsel working together to reach a resolution. Defendant's request for time counterbalances the State's extensions for plea negotiations. We view this as a valid reason justifying delay. Plea

10

negotiations are a normal part of a criminal prosecution. We weigh the delays in negotiating the plea offer neutrally.

**2.      Witnesses**

{28}      Defendant argues that the State's third and fourth requests for continuance were for mistakes made in scheduling witness interviews, which should be classified as negligence and weighed against the State. The State responds that confusion in scheduling witness interviews does not amount to negligence, but even if the State was negligent, negligence should not be weighed heavily against the State. The State also argues that complications stemming from Lewis's arrest should be treated like a missing witness, which justifies an appropriate delay.

{29}      In *State v. Moreno*, the State "repeatedly failed to schedule the interviews or canceled them for reasons that cannot be attributed to Defendant." 2010-NMCA-044, ¶ 29, 148 N.M. 253, 233 P.3d 782. In that case we found that the "State's inability to schedule essential witness interviews despite its repeated assurances that it would do so constitute[d] bureaucratic indifference" and weighed against the State. *Id.*

{30}      Here, there were two occasions when the State had scheduling issues. First, in its January 15, 2010 request for continuance the State had to reschedule witness interviews because the witnesses had the dates wrong. In that same motion, the State explained that Lewis had recently been indicted for an unrelated crime and required

11

an attorney to be present during his interview. The State had to wait to interview Lewis until an attorney was appointed to him. Defendant opposed this motion.

{31}    In the State's April 16, 2010 motion for continuance, the State said it still needed to conduct interviews of the emergency room doctors who treated the victims. The State also had interviews scheduled with police officers, but had to reschedule because the interviews were "inadvertently not confirmed with [Defendant's] counsel."

{32}    While the delay in interviewing Mr. Lewis could not be helped, the January and April 2010 requests for more time to interview witnesses occurred a year after Defendant's indictment. We view this as negligent delay and weigh delays in interviewing witnesses against the State.

**3.    Caseload**

{33}    Defendant argues that the State's sixth request for continuance was because of the State's caseload and should be weighed against the State. Administrative burdens on the criminal justice system are weighed against the State. *Garza*, 2009-NMSC-038, ¶ 29. In its October 16, 2009 and October 5, 2010 motions, the State said that it had other trials scheduled for the same time period. In response to the State's October 16, 2009 motion, defense counsel also stated he had other trials scheduled at the same time as Defendant's trial. We weigh the excessive case load only slightly against the

12

State. *See Zurla v. State*, 1990-NMSC-011, ¶ 14, 109 N.M. 640, 789 P.2d 588 (stating that excessive caseload is to be weighed less heavily against the prosecution than intentional delay); *Laney*, 2003-NMCA-144, ¶ 17 (indicating that delay attributable to excessive caseload is a form of negligent delay and is a "more neutral reason that weighs lightly against the [prosecution]").

{34} To sum up, the State "bears the primary responsibility to bring cases to trial within a reasonable time." *Salandre v. State*, 1991-NMSC-016, ¶ 20, 111 N.M. 422, 806 P.2d 562. However, both parties contributed to this delay in some way. In considering all the reasons for delay, we weigh the reasons neutrally.

**C.    Defendant's Assertion of the Right to a Speedy Trial**

{35} "[T]he defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Barker*, 407 U.S. at 528. Defendant argues that his three pro se motions support his assertion of his right to a speedy trial. Defendant argues that he did not knowingly fail to object or delay his filings for strategic purposes. He explains that in his October 1, 2010 motion objecting to extensions and continuances, he stated that he never discussed the continuances with his trial counsel and had little to no contact with his trial counsel. Defendant argues that he made a vigorous assertion of his rights by filing several pro se motions.

{36} The State counters that defense counsel stipulated to all but one of the State's extension requests and Defendant did not assert his speedy trial rights until his third lawyer entered the case. The State also argues that of Defendant's three pro se motions, only one asserted his speedy trial rights. Finally, the State argues that Defendant's assertion was not of the frequency or force that should lead us to weigh this third factor in favor of Defendant.

{37} "[W]e assess the timing of the defendant's assertion and the manner in which the right was asserted." *Garza*, 2009-NMSC-038, ¶ 32. "[W]e accord weight to the 'frequency and force' of the defendant's objections to the delay." *Id.* (quoting *Barker*, 407 U.S. at 529). We also look at the defendant's actions with regard to the delay, such as defense motions that slow down the process and procedural maneuvers to delay the trial. *Id.* The defendant's failure to assert the right is not error since the right is fundamental. *Id.* However, "timeliness and vigor with which the right is asserted may be considered as an indication of whether a defendant was denied needed access to speedy trial over his objection or whether the issue was raised on appeal as afterthought." *Id.*

{38} On February 23, 2009, defense counsel filed a demand for a speedy trial. Defendant also filed a pro se motion to dismiss for violation of his right to a speedy trial on September 15, 2010. At this point Defendant had been incarcerated since

14

January 13, 2009. Around the same time, Defendant also filed a motion to dismiss for ineffective assistance of counsel claiming that his attorney never communicated with him about the extensions and continuances and failed to take any action in his case. Defendant also filed a motion objecting to the continuances and extensions stating that Defendant never agreed to any extension or continuance, and did not have an opportunity to object to the July 12, 2009, October 16, 2009, January 15, 2010, and the April 16, 2010 motions. The district court held a hearing on Defendant's pro se motions on November 9, 2010, and denied them.

{39}     Defendant argues that the delay is due to the State's and Defendant's attorney continuously acquiescing to long delays without his consent. He contends that his pro se motions demonstrate his vigorous assertions of his right and should be given greater weight than similar motions in *Garza*. We recognize that defense counsel stipulated to most of the time extensions. Moreover, Defendant's pro se motions were filed in September and October 2010 after Defendant had already spent over eighteen months incarcerated. We therefore weigh this factor only slightly in favor of Defendant.

**D.     Particularized Showing of Prejudice to Defendant**

{40}     Our analysis of prejudice focuses on protecting three interests: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused;

15

and (3) to limit the possibility that the defense will be impaired. *Garza*, 2009-NMSC-038, ¶ 35. Here, Defendant was incarcerated for approximately twenty-seven months before the case was tried. We therefore agree that Defendant suffered prejudice by virtue of his pretrial incarceration. *See Moreno*, 2010-NMCA-044, ¶ 36 (concluding that the defendant was prejudiced because the period of pretrial incarceration was twenty-two months); *State v. Ochoa*, 2014-NMCA-065, ¶ 23, 327 P.3d 1102 (concluding that the defendant was prejudiced by being incarcerated to a two-year period between his arrest and trial). However, we recognize that "some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial." *Id.* ¶ 22 (internal quotations and alterations omitted). Moreover, without a particularized showing of prejudice, we will not "speculate as to the impact of pretrial incarceration on a defendant or the degree of anxiety" he suffered. *Garza*, 2009-NMSC-038, ¶ 32.

{41} Defendant argues that the delay implicated each of the three categories of prejudice. Defendant contends that because the first three factors weigh heavily in his favor, he does not need to make a particularized showing of prejudice to demonstrate that his speedy trial right was violated. However, Defendant still argues that he sat in jail for twenty-seven months with little to no assistance of counsel awaiting trial,

16

which support Defendant's undue oppression and anxiety. Defendant also argues that the delay impaired his defense because eyewitness testimony lost accuracy.

{42}     The State asserts that Defendant failed to demonstrate that he was prejudiced in a cognizable manner by the delay. We agree. Defendant failed to state with particularity how he was prejudiced by the delay. Defendant states that he was unable to gather evidence, contact witnesses, or otherwise prepare his defense. However, Defendant fails to state with any particularity how "the delay caused the unavailability of a witness and impaired the defense" and "what exculpatory testimony would have been offered." *Garza*, 2009-NMSC-038, ¶ 36 (internal quotation marks and citation omitted). Defendant makes no showing of particularized prejudice. We therefore weigh this factor only slightly in Defendant's favor. *Moreno*, 2010-NMCA-044, ¶ 37 (concluding that the prejudicial prong weighed "slightly" in favor of the defendant when he was incarcerated for twenty-two months).

**E.     Balancing Test**

{43}     In balancing the four factors in this case, the primary issue we consider is "whether a court can find a violation of a defendant's speedy trial right without a particularized showing of prejudice." *Garza*, 2009-NMSC-038, ¶ 38. Upon analyzing the four factors we determine that the length of delay weighs against the State; the reasons for delay weigh neutrally; and Defendant's assertion of his right weighs

17

slightly in his favor. However, Defendant failed to make a particularized showing of prejudice. We therefore conclude that Defendant was not deprived of his constitutional right to a speedy trial. *See id.* ¶ 40 (concluding that where the defendant failed to demonstrate particularized prejudice and remaining factors did not weigh heavily in the defendant's favor, there was no speedy trial violation); *Zurla*, 1990-NMSC-011, ¶ 8 (stating that "no one factor constitutes either a necessary or sufficient condition to finding a deprivation of the right to a speedy trial").

**II.     Defendant's Convictions Violate the Prohibition Against Double Jeopardy**

{44}     Defendant was convicted of attempted first degree murder and two counts of aggravated battery against Hicks and two counts of aggravated battery against Lewis. Defendant argues that the aggravated battery convictions arose out of unitary conduct and violate double jeopardy. The State agrees with Defendant that three of Defendant's four convictions of aggravated battery should be vacated. We first address the law of double jeopardy and then address how the law applies to the convictions.

{45}     "The Fifth Amendment of the United States Constitution prohibits double jeopardy and is made applicable to New Mexico by the Fourteenth Amendment." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. The Double Jeopardy Clause of the United States Constitution guarantees that no "person be subject for the same

18

offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "Double jeopardy protects against multiple punishments for the same offense." *State v. Silvas*, 2015-NMSC-006, ¶ 8, 343 P.3d 616. Double jeopardy presents an issue of law that is reviewed de novo. *State v. Montoya*, 2013-NMSC-020, ¶ 29, 306 P.3d 426.

**{46}** There are two types of multiple punishment cases: unit-of-prosecution cases, in which an individual is convicted of multiple violations of the same criminal statute, and double-description cases, in which a single act results in multiple convictions under different statutes. *See Swafford v. State*, 1991-NMSC-043, ¶¶ 8-9, 112 N.M. 3, 810 P.2d 1223. This case is the latter.

**{47}** We analyze Defendant's double-description double jeopardy claim in accordance with the two-part test set forth in *Swafford*. *Id.* ¶¶ 27-34. Under *Swafford*, we first analyze whether the defendant's conduct was unitary. *Id.* ¶ 25. If the conduct is not unitary, the analysis ends and double jeopardy does not apply. *Id.* However, if the conduct is unitary, then we must determine if the Legislature intended to punish the offenses separately. *Id.*

**{48}** First, "[c]onduct is unitary when not sufficiently separated by time and place, and the object and result or quality and nature of the acts cannot be distinguished." *Silvas*, 2015-NMSC-006, ¶ 10. If one statute is subsumed within the other, the inquiry

is over and the statues are the same for double jeopardy purposes—punishment cannot be had for both. *Montoya*, 2013-NMSC-020, ¶ 31.

**{49}** Second, we determine "whether Defendant has been punished twice for the same offense, and if so, whether the Legislature intended that result." *Silvas*, 2015-NMSC-006, ¶ 11. To do so, we utilize "traditional means of determining legislative intent: the language, history, and subject of the statutes, and we must identify the particular evil sought to be addressed by each offense." *Montoya*, 2013-NMSC-020, ¶ 32 (internal quotation marks and citation omitted). We take "into consideration the relationship between the statutory offenses and their common commission by unitary conduct, the . . . social harms to which they are directed, and their use by the State in [the] case." *Id.* ¶ 52. Typically, if the two statutes are "usually violated together, [and] seem designed to protect the same social interest, the inference becomes strong that the function of the multiple statutes is only to allow alternative means of prosecution." *Id.* ¶ 32 (internal quotation marks and citation). Furthermore, "lenity applies in cases of ambiguity regarding the reach of criminal statutes, because reasonable minds can differ as to the Legislature's intent in punishing the two crimes." *Id.* ¶ 51 (alteration, internal quotation marks, and citation omitted).

{50} "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Swafford*, 1991-NMSC-043, ¶ 25.

{51} We address the convictions for Defendant's crimes committed against the two victims.

## A. Anthony Hicks

{52} The jury convicted Defendant of attempted first-degree murder, aggravated battery with a deadly weapon, and aggravated battery causing great bodily harm against Anthony Hicks. Defendant argues on appeal that the two counts of aggravated battery violate the prohibition against double jeopardy. Defendant asserts that attempted first degree murder and aggravated battery arise from unitary conduct and the Legislature did not intend to punish the two crimes separately. The State agrees that the aggravated battery charges should be vacated.

{53} In this case, there was a confrontation between Defendant and Hicks resulting in Defendant shooting Hicks in the head. The State used eyewitness testimony to prove all three counts. We agree with Defendant that his conduct involved a single act of one shot against Hicks. Therefore, the three crimes the State charged were one illegal act, making the conduct unitary.

{54} Given the unitary conduct, we now determine whether the legislature intended the result. In *Swick*, 2012-NMSC-018, ¶ 19, our Supreme Court ruled that "the Legislature did not intend multiple punishments for attempted murder and aggravated battery arising from the same conduct because the latter is subsumed by the former." In that case, like the one before us, the defendant was convicted of aggravated battery with a deadly weapon and attempted murder among other convictions. *Id.* ¶ 6. The parties did not dispute that the underlying conduct supporting the convictions was unitary. *Id.* ¶ 20. Then the Court determined the Legislature's intent. The Court determined that the State used the aggravated batteries to prove the "began to do an act which constituted a substantial part of Murder" element of attempted murder. *Id.* ¶ 25. The State proffered the same testimony to prove the aggravated batteries and the attempted murder. *Id.* ¶ 26. "[T]he aggravated battery elements were subsumed within the attempted murder elements." *Id.* ¶ 27.

{55} The Court added that "[e]ven if the elements of attempted murder do not subsume the elements of aggravated battery, an examination of these statutes leads us to conclude that [the defendant's] convictions violate the double jeopardy prohibition" for two reasons. *Id.* ¶ 29. "First, the social harms addressed by each statute do not conclusively indicate an intent to punish separately." *Id.* "Both statutes punish overt acts against a person's safety but take different degrees into consideration. The

aggravated battery statute concerns itself with the intent to harm and the attempted murder statute concerns itself with the intent to harm fatally." *Id.* "Second, the rule of lenity should have been applied in [the defendant's] favor" because "reasonable minds can differ as to the Legislature's intent in punishing [the] two crimes." *Id.* ¶ 30. For these reasons the Court held that the multiple convictions could not stand. *Id.*

{56} We follow the *Swick* analysis and reasoning here because the circumstances are alike. Like in *Swick*, the State's legal theory to prove the case used the aggravated batteries to prove the attempted murder. The State proffered the same testimonial evidence to prove the attempted murder and the two aggravated battery convictions. The *Swick* court also already determined that the statutes do not decisively indicate an intent to punish separately, but the crimes are "related offenses [that] may be presumed to be punished as a single offense." *Id.* ¶ 29 (internal quotation marks and citation omitted). Finally, the rule of lenity, like in *Swick*, should be applied in Defendant's favor when "doubt regarding legislative intent remains[.]" *Id.* ¶ 30. Therefore, because the attempted first degree murder and the two aggravated battery convictions violate the prohibition against double jeopardy, we remand this case to the district court to vacate the two convictions for aggravated battery. For these reasons, we hold that the multiple aggravated battery convictions cannot stand.

**B.     Adrian Lewis**

{57} A jury convicted Defendant of aggravated battery of Adrian Lewis with a deadly weapon, and aggravated battery causing great bodily harm against Adrian Lewis. Defendant argues that the conviction of both counts, rather than only one, violates the prohibition against double jeopardy. Defendant explains that the State charged him with one count of aggravated battery against Lewis, but presented two alternatives: deadly weapon and great bodily harm. The jury then convicted Defendant on both counts, which Defendant asserts violated the prohibition of double jeopardy. We again determine if the conduct was unitary and if the Legislature intended separate punishment for the offenses.

{58} Our aggravated battery statute, NMSA 1978, § 30-3-5 (1969), is singular as to what aggravated battery is: "the unlawful touching or application of force to the person of another with intent to injure that person." Section 30-3-5(A). Subsection C includes alternative types of aggravated battery: "inflicting great bodily harm" or "with a deadly weapon." Section 30-3-5(C). The evil sought to be addressed by the statute is aggravated battery, while the alternative theories are the means for the conviction.

{59} The indictment and the jury instructions given at trial reflect the alternative charges and do not appear to charge Defendant with two counts of aggravated battery for the same conduct. The indictment charges Defendant with aggravated battery with

a deadly weapon, or in the alternative, aggravated battery with great bodily harm. Jury instruction number nine instructs the jury on aggravated battery with a deadly weapon, whereas jury instruction number ten instructs the jury on aggravated battery with great bodily harm in the alternative.

{60} Like Defendant's conduct towards Hicks, the testimony reveals that Defendant's actions against Lewis were within the same time and place. The two "tussled" and then Defendant shot Lewis in the face. The conduct was unitary. The statute also supports that the Legislature did not intend multiple punishments since Subsection C allows for alternative charges. For these reasons, only one aggravated battery conviction may stand, and we remand to the district court to vacate one conviction of aggravated battery.

**III.   Sufficiency of the Evidence**

{61} Defendant argues that the evidence presented at trial was insufficient to support the jury's finding of guilt. Defendant contends that the evidence presented at trial was "inherently improbable" and could not have supported the jury's finding beyond a reasonable doubt that Defendant was not acting in self-defense during the altercations with Hicks and Lewis. The State contends that the State's proof of Defendant's guilt was overwhelming. The State maintains that witness testimony demonstrated that there was no altercation between Defendant and the victims and that the jury resolved

issues of witness credibility in favor of the State's witnesses. Upon reviewing the evidence in light of the jury verdict, we affirm Defendant's convictions.

{62} On appeal, our review of the sufficiency of the evidence to support a criminal conviction is "to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *State v. Garcia*, 1992-NMSC-048, ¶ 26, 114 N.M. 269, 837 P.2d 862 (quoting *Jackson v. Virginia*, 443 U.S. 307, 317-19 (1979)). We determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis omitted). "[W]e resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

{63} Where the defendant presents evidence of self-defense, the jury is charged with weighing the evidence and credibility of the testimony presented. *See State v. Gurule*, 2004-NMCA-008, ¶ 38, 134 N.M. 804, 82 P.3d 975 ("It is up to the jury to weigh the testimony and contradictory evidence and believe or disbelieve any testimony it hears."). It is for the jury to determine whether it believes the defendant's evidence and theory of self-defense. *State v. Hunter*, 2001-NMCA-078, ¶ 16, 131 N.M. 76, 33 P.3d 296. If the jury rejects the defendant's assertion of self-defense, it is not

unreasonable that the defendant should be found guilty of the crime. *State v. Harrison*, 1970-NMCA-071, ¶ 40, 81 N.M. 623, 471 P.2d 193. "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *Rojo*, 1999-NMSC-001, ¶ 19.

{64} Defendant was convicted of one count of attempted first degree-murder, two counts of aggravated battery against Hicks, and two counts of aggravated battery against Lewis. Having already determined that three of the aggravated battery counts violated the prohibition against double jeopardy, we address the sufficiency of the evidence for the attempted first-degree murder conviction against Hicks and the aggravated battery conviction against Lewis.

{65} First, Defendant argues that the evidence presented at trial regarding the altercation with Lewis was contradictory and inconsistent with the physical evidence. Defendant asserts that Lewis testified that Defendant shot at him three times, but it is inherently implausible that the other witnesses did not notice the multiple gunshots. Thus, Defendant asserts, we should reject the State's evidence as a physical impossibility.

{66} Second, Defendant argues that the evidence presented at trial was insufficient to support a finding that Defendant did not act in self-defense during the altercation with Hicks. Defendant explains Hicks testified that he had no specific memory about

the altercation with Defendant. The other witnesses testified that they were near Hicks before the gunshot and did not witness an argument between Hicks and Defendant. Defendant contends that the evidence presented was therefore insufficient to allow the jury to make a finding that Defendant was not acting in self-defense.

{67}     Defendant's assertions that the witness testimony is "inherently implausible" and insufficient to support a self-defense claim are based upon his particular view of the credibility of the State's witnesses. While "[t]estimony by a witness whom the factfinder has believed may be rejected by an appellate court only if there is a physical impossibility that the statements are true or the falsity of the statement is apparent without resort to inferences or deductions," *Gurule*, 2004-NMCA-008, ¶ 38 (internal quotation marks and citation omitted), other witness testimony supports the theory that there were multiple gunshots. Nonetheless, "the jury was not obligated to believe Defendant's testimony, to disbelieve or discount conflicting testimony, or to adopt Defendant's view." *State v. Foxen*, 2001-NMCA-061, ¶ 17, 130 N.M. 670, 29 P.3d 1071. *See State v. Sosa*, 2000-NMSC-036, ¶ 8, 129 N.M. 767, 14 P.3d 32 ("[C]redibility of witnesses is for the jury."); *State v. Johnson*, 1983-NMSC-043, ¶ 7, 99 N.M. 682, 662 P.2d 1349 (stating that conflicts in the evidence, including conflicts in testimony among witnesses, are to be resolved by the trier of fact).

**{68}** In *State v. Sutphin*, 1988-NMSC-031, ¶ 20, 107 N.M. 126, 753 P.2d 1314, the defendant also appealed arguing the evidence was insufficient to sustain the conviction. In that case, a jury convicted the defendant of first-degree murder. *Id.* ¶ 5. On appeal, the defendant claimed that "a criminal conviction [could not] be sustained if a reasonable hypothesis could be designed which is consistent with innocence." *Id.* ¶ 20. The defendant did not deny killing the victim, but claimed that the killing had been in self-defense. *Id.* ¶ 22.

**{69}** The Supreme Court rejected the defendant's argument stating that "[a]n appellate court does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence." *Id.* ¶ 21. Instead, the test to determine the sufficiency of the evidence is "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *Id.*

**{70}** Like in the present case, the jury in *Sutphin* was instructed on the defendant's theory of self-defense. *Id.* ¶ 23. Evidence conflicting the State's theory of first degree murder was also introduced, and "the jury resolved conflicts in the evidence and questions of credibility in favor of guilt, thereby rejecting [the] defendant's version of the incident." *Id.* The Supreme Court concluded there was sufficient evidence for the jury to find the defendant guilty. *Id.*

29

{71} Here, the jury rejected Defendant's claim of acting in self-defense or defense of another. Although Defendant points to evidence that supported Defendant's theory of innocence, this Court does not consider evidence supporting an acquittal when reviewing the sufficiency of the evidence. *See Rojo*, 1999-NMSC-001, ¶ 19 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts."). Thus, there is sufficient evidence to sustain Defendant's conviction for attempted first-degree murder and aggravated battery.

**IV.    Ineffective Assistance of Counsel**

{72} Defendant claims that he was denied his right to effective assistance of counsel at two critical stages of the proceedings. First, trial counsel failed to protect Defendant's right to speedy trial by continuously acquiescing to the State's continuances. Second, trial counsel failed to adequately prepare Defendant's defense, and denied him his right to participate in the preparation of his defense.

{73} A claim of ineffective assistance of counsel is established by a showing of error by counsel and prejudice resulting from the error. *State v. Bernal,* 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289 (citing *Strickland v. Washington*, 466 U.S. 668, 690, 692 (1984)). An error is found if the "attorney's conduct fell below that of a reasonably competent attorney." *State v. Baca*, 1997-NMSC-059, ¶ 24, 124 N.M. 333,

950 P.2d 776. A defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bernal*, 2006-NMSC-050, ¶ 32 (internal quotation marks and citation omitted). "Without such prima facie evidence, the Court presumes that defense counsel's performance fell within the range of reasonable representation." *State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517.

{74}     First, Defendant claims that Defendant's trial counsel acquiesced to the State's six continuances without adequately informing Defendant and without seeking his consent. He argues that the multiple continuances of trial violated Defendant's constitutional right to a speedy trial and failing to safeguard his speedy trial right falls below the standard of competent representation. He also argues that he was prejudiced by the twenty-seven month incarceration and that he was without the assistance of counsel during most of that time and was unable to gather evidence, contact witnesses, or prepare his defense.

{75}     In this case Defendant had three different attorneys—two from the Public Defender's office and one contracted through the Public Defender's office. Defendant's first attorney entered her appearance on February 23, 2009, and withdrew on June 30, 2009, when she left the public defender's office. Within the period that she represented Defendant she negotiated at least one plea offer. Also within that time

31

the State filed its first four motions for continuance or extension. Defense counsel submitted memoranda in response to each of the State's motions explaining the progress of the case and why the State was requesting the extensions and she objected to the third motion.

{76} Defendant's second trial attorney was briefly appointed until realizing he had a conflict of interest. He stipulated to the State's motions for continuance to allow for him to prepare for the trial.

{77} Defendant's third trial attorney entered his appearance on July 21, 2010. Trial counsel stipulated to the State's motions for continuance due to conflicting trial schedules. The third attorney also filed a motion for continuance requesting more time to prepare for trial due to his personal ongoing medical emergency.

{78} The record does not support finding that defense counsels' actions or inactions fell below an objective standard of reasonableness. Even if we were to assume the purported failures fell below an objective standard of reasonableness, Defendant fails to show that there was a reasonable probability that but for counsel's errors, the result of the case would have been different. Defendant's argument amounts to an assertion of prejudice, without a showing of prejudice. We do not find this persuasive. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice."); *see also State v. Gonzales*,

2011-NMCA-007, ¶ 30, 149 N.M. 226, 247 P.3d 1111 (explaining that we will not consider arguments based on factual allegations that are unsupported by citation to the record proper).

{79} Defendant argues that trial counsel failed to adequately prepare his defense and denied him his right to participate in preparing his defense. Defendant asserts that trial counsel failed to interview witnesses. Defendant argues that trial counsel failed to meet with him until shortly before trial and did not consult with him as to trial strategy. Defendant maintains that trial counsel's inactions prejudiced him because he had a strong self-defense claim.

{80} With regard to defense counsel failing to interview witnesses, Defendant does not demonstrate how the failure to further interview witnesses was prejudicial, as Defendant has not informed this Court what testimony these witnesses would have provided. *See Baca*, 1997-NMSC-045, ¶ 20 (stating that whether a defendant was prejudiced depends on whether "the allegedly incompetent representation prejudiced the case such that but for counsel's error, there is a reasonable probability that the result of the conviction proceedings would have been different"), *overruled on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36, 146 N.M. 357, 210 P.3d 783. The record does not contain any evidence of how the additional information from witnesses would have changed the outcome of the proceedings. *See State v. Dartez*,

1998-NMCA-009, ¶ 27, 124 N.M. 455, 952 P.2d 450 (holding that counsel's failure to interview the witness was not prejudicial, for purposes of a claim of ineffective assistance, in the absence of any indication that the witness's testimony would have benefitted the defendant).

{81} Defendant also contends that his attorney failed to meet with him until shortly before the trial. The record on appeal is insufficient to support this contention. *See State v. Telles*, 1999-NMCA-013, ¶ 25, 126 N.M. 593, 973 P.2d 845; *State v. Rickard*, 1994-NMCA-083, ¶ 14, 118 N.M. 312, 881 P.2d 57 (stating that the Court of Appeals will not review matters that are not of record), *rev'd in part on other grounds,* 1994-NMSC-111, 118 N.M. 586, 884 P.2d 477. Defendant thus fails to make a prima facie showing of ineffective assistance of counsel on failure to communicate. *See State v. Hosteen*, 1996-NMCA-084, ¶ 6, 122 N.M. 228, 923 P.2d 595, *aff'd on other grounds by* 1997-NMSC-063, 124 N.M. 402, 951 P.2d 619; *see also State v. Chamberlain*, 1991-NMSC-094, ¶ 47, 112 N.M. 723, 819 P.2d 673 (stating that "the amount of time counsel spent with [the] defendant, without more, does not constitute ineffective assistance of counsel").

{82} Defendant also fails to demonstrate what further action trial counsel should have taken to bolster Defendant's self-defense claim. Trial counsel had Defendant testify to recount the events and elicit Defendant's state-of-mind during the night of

the events. Trial counsel had two self-defense instructions and two defense of another instructions conforming to UJI 14-5181 and 14-5182 NMRA. "Without additional, specific evidence as to the basis of Defendant's defense, we cannot say that but for counsel's performance, there is a reasonable probability that the outcome would have been different. In other words, there has been no prima facie showing of prejudice to Defendant." *State v. Cordova*, 2014-NMCA-081, ¶ 10, 331 P.3d 980, *cert. denied*, 2014-NMCERT-007, 331 P.3d 923.

{83} As we have stated, the record here is insufficient to establish whether defense counsel's actions were unreasonable or caused prejudice. Defendant has not established a prima facie case of ineffective assistance of counsel given the deficiency of the record. *State v. Plouse*, 2003-NMCA-048, ¶ 15, 133 N.M. 495, 64 P.3d 522. We leave the way open for him to pursue the issue in a habeas proceeding as our courts prefer habeas proceedings so that "the defendant may actually develop the record with respect to defense counsel's actions." *State v. Arrendondo*, 2012-NMSC-013, ¶ 38.

**V.     Testimony Before the Grand Jury**

{84} Defendant contends, pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, that he was denied his right to testify before a grand jury under NMSA 1978, Section 31-6-11 (2003) and requests that the indictment be dismissed. The State asserts that

Defendant's argument presents no challenge to the indictment and any error in the indictment would have been cured by the trial verdict.

{85}    Although Defendant's argument is not fully developed, we will address it because Defendant presented it pursuant to *Franklin* and *Boyer*. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory argument that relied on several factual assertions that were made without citation to the record).

{86}    Section 31-6-11(C) provides in part that "the target of a grand jury investigation shall be notified in writing . . . [of his] right to testify no earlier than four days after receiving the target notice if he is in custody[.]" Section 31-6-11(C)(3). The two purposes of the grand jury are "to investigate the matter for which it is called and to determine from the evidence if there is probable cause to believe an offense has been committed" and to "protect citizens against unfounded accusations[.]" *State v. Bent*, 2012-NMSC-038, ¶ 17, 289 P.3d 1225 (alteration, internal quotation marks, and citation omitted) (citing UJI 14-8001 NMRA). However, "because Defendant has brought this issue to us so late . . . we cannot fashion a relief that would be consistent with the constitutional purpose of requiring a grand jury in the first place." *Bent*, 2012-NMSC-038, ¶ 20. "[T]here is no simple way after the verdict to restore the defendant to the position in which he would have been had the indictment been

dismissed before trial." *Id.* ¶ 22 (quoting *United States v. Mechanik*, 475 U.S. 66, 71 (1986)). Additionally, Defendant does not allege that not testifying at the grand jury proceedings had any effect on the outcome of the trial. *See id.* ¶ 26. The jury verdict "rendered harmless any conceivable error in the charging decision." *Id.* ¶ 27 (internal quotation marks and citation omitted).

**CONCLUSION**

{87}    Consistent with this Opinion, we affirm Defendant's convictions for attempted first degree murder of Anthony Hicks and one conviction of aggravated battery of Adrian Lewis. We remand this case to the district court to vacate Defendant's two convictions for aggravated battery of Anthony Hicks and his one conviction of aggravated battery of Adrian Lewis and for resentencing if appropriate.

{88}    **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Chief Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**RODERICK T. KENNEDY, Judge**